**UNITED STATES ex rel. Harold D. ROGERS**

v.

**Mark S. RICHMOND, Warden of Connecticut State Prison (Substituted Respondent).**

Civ. No. 6294.

United States District Court
D. Connecticut.

Oct. 14, 1958.

See also D.C. 178 F.Supp. 44.

Louis Pollak, New Haven, Conn., Jacob Zeldes, Bridgeport, Conn., for petitioner.

Abraham S. Ullman, State's Atty. for New Haven County, New Haven, Conn., Robert C. Zampano, East Haven, Conn., for respondent.

J. JOSEPH SMITH, Chief Judge.

By writ of habeas corpus, this court set aside a state court judgment on a

jury finding of relator's guilt of murder in the first degree, by reason of lack of due process through the use of two confessions found by the state trial court to have been voluntary, but found after hearing by this court to have been not voluntary. The Court of Appeals reversed, remanding for consideration of the entire record of the proceedings before the state courts, a portion of which, the testimony and the findings of the trial judge on the issue of the voluntary character of the two confessions, had not been placed in evidence at the hearing here. United States ex rel. Rogers v. Richmond, 2 Cir., 252 F.2d 807 and 812. The Supreme Court denied certiorari, with a brief opinion. Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361.

The remand of this matter to this court for further proceedings in accordance with the opinion of the Court of Appeals has left some doubt as to the meaning of the language employed by that court in both its original opinion and the opinion on rehearing.

The Court of Appeals felt that this court had followed improper procedure in holding a hearing de novo without first calling for the entire record of the state trial proceedings (or at least those sections pertinent to the coerced confession issue, including testimony at the preliminary hearing before the trial judge on that issue), and in making its decision that relator was entitled to have the judgment of conviction set aside on the basis of testimony adduced at this hearing, rather than on the basis of the state trial record. The Court of Appeals relied on its interpretation of Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, a case in which the Supreme Court discussed the procedures to be followed by a United States District Judge when he is dealing with a state prisoner's application for a writ of habeas corpus. According to the Court of Appeals, Brown v. Allen requires a District Judge to call for and examine the state trial record in such cases. It further held:

"Unless the judge below shall find in the record thus before him material which he deems to constitute 'vital flaws' and 'unusual circumstances' within the meaning of Brown v. Allen, we hold that he should make the necessary constitutional determinations *exclusively* on the basis of the historical facts as found by the State trial court. Brown v. Allen, 344 U.S. at pages 507, 508, 73 S.Ct. at page 446." 252 F.2d at page 811 (Emphasis supplied).

This would appear to be a clear command to the court below to proceed as follows:

1st, Obtain the state trial record.

2nd, Examine same to determine whether the state proceedings were marred by some "vital flaw" or "unusual circumstance."

3rd, Should this examination reveal no such flaws or circumstances, then the court must confine itself to analyzing the historical facts as found by the state trial court as the basis of determining the constitutional question raised by relator's petition.

4th, Alternatively, should the examination reveal the existence of such a flaw or of such circumstances, then the court is allowed to go outside the state record and to hold a hearing on the same issues that were tried in the state trial court, if the court, in its discretion, decides that a trial de novo of these issues is necessary.

If there were any doubt that the use of the word "should" added anything but a mandatory spirit to this paragraph, that should be dispelled by the word "exclusively" as it is used to describe the method by which the court is to make the constitutional determination. The Court of Appeals did not recede from this position in denying relator's petition for rehearing. In that petition relator had argued that the opinion previously issued was in conflict with Brown v. Allen, the very opinion relied on by the Court of Appeals. It appears that

relator relies on Brown v. Allen as providing authority that the District Judge has discretion to hear such evidence as the parties choose to offer at the federal hearing, including evidence on issues already heard in the state court and which is, of course, in the state record. The Court of Appeals stated in its supplementary opinion that it did not read Brown v. Allen as relator did; that any "additional evidence" heard by the District Judge, in the absence of a vital flaw, etc., had to be confined to evidence material on the constitutional question which the state court had excluded or as to which it had made no finding. Relator's bid for certiorari was denied by the Supreme Court. However, contrary to its usual practice, the Supreme Court issued a brief statement with the denial, designed, apparently, to guide the courts below by explaining how the members of the Court interpreted the opinion of the Court of Appeals:

> "On consideration of the petition for a writ of certiorari herein to the United States Court of Appeals for the Second Circuit, it is ordered by this Court that the said petition be, and the same is hereby denied. We read the opinion of the Court of Appeals as holding that while the District Judge may, unless he finds a vital flaw in the State Court proceedings, accept the determination in such proceedings, he need not deem such determination binding, and may take testimony. See Brown v. Allen, 344 U.S. 443, 506, et seq., 73 S.Ct. 397, 97 L.Ed. 469." Rogers v. Richmond, 357 U.S. 220, 78 S.Ct. 1365, 2 L.Ed.2d 1361 (June 16, 1958).

This "interpretation" by the Supreme Court, on its face, seems to mean that the District Judge, after examining the record of the state proceedings, is free to accept the state factual determinations in those proceedings and base his constitutional determination thereon, or to reject them and call for testimony on which to base his constitutional determi-

nations, unless his examination of the state proceedings reveals some "vital flaw", in which instance the implication is that he cannot accept the state determination but *must* call for testimony. This, essentially is relator's present position. See Comment to the same effect (that the Supreme Court rejected any limitation on the discretion of the District Court) 58 Columbia Law Review 895.

Yet if that were so there would be no bounds on the exercise of the judge's discretion, although the Court sought to define some such bounds in Brown v. Allen. The Supreme Court's allusion to the discussion on p. 506 et seq. of that opinion emphasizing the possibility that the facts have been tried and adjudicated against the applicant, and implying that their determination may well be accepted in the absence of a vital flaw in their state court determination points to a standard to be followed. Whether we call it a vital flaw or unusual circumstance, or a substantial ground for exercise of judicial discretion in granting a hearing, something must appear upon examination of the state court record to require a trial de novo of the fact issues. While the comment of the Supreme Court in denying certiorari guards against too narrow an interpretation of Brown v. Allen, it can hardly have been intended to sanction complete rejection of the Court of Appeals' insistence on consideration of the full state court record in determining whether grounds exist for a hearing or we should have had a more extended discussion of the reason for so flat a disagreement, with the reasoning of the Court of Appeals. Unless, on consideration of the full record such grounds are found, this court must accept the findings of historical fact in reaching its determination on the constitutional issues. This court is bound by the findings of the state trial court that no request for counsel was made, and that the confessions were voluntary, unless some vital flaw or unusual circumstance exists or some other

basis appears for consideration of testimony outside the record. The Court of Appeals requires examination of the state court record in full before determining whether to take additional testimony. The Supreme Court refused review of the ruling of the Court of Appeals but makes it plain that there may be circumstances in which the judge may, after review of the state court record, decide to take testimony and not be bound by the state court findings, even though no vital flaw is necessarily found. Circumstances must be shown to justify such a course, however.

Thomas v. State of Arizona, 356 U.S. 390, 78 S.Ct. 885, 2 L.Ed.2d 863, indicates that the holding of a hearing is within the trial judge's discretion. In that case the judge did not hold a hearing; and this was held not an abuse of discretion. In the absence of a hearing, the Supreme Court could review only on the undisputed facts in the state court record. In the case at bar a hearing was held and findings made at variance with the state court's historical findings. The hearing, however, was held without a review of the full state court trial record to determine whether grounds existed for exercise of discretion to hold a hearing de novo. This course was disapproved by the Court of Appeals, which remanded for preliminary consideration of the full state court record to determine whether vital flaw or unusual circumstance exists. The Supreme Court refused certiorari, with the comment already quoted.

■ So the question here is whether on review of the full trial court record, testimony should be considered in a trial de novo. The state trial court fully heard the evidence on the underlying facts surrounding the confessions and concluded they were voluntary. Some weight appears to have been given to the finding that the circumstances were not such as to be likely to elicit untrue confessions. In view of the finding that Rogers never did ask for counsel, however, it is not likely that the finding on

the probability of truth had any real effect on the outcome. The sense of the Supreme Court's interpretation of the language of the Court of Appeals is that while the District Judge may take additional testimony not considered by the state trial court on constitutional issues, such as lack of due process by the use of coerced confessions, and make an independent determination of the facts, such as the voluntary character of confessions, and must independently determine whether the conviction may constitutionally stand, he may not substitute his judgment on factual issues fairly tried (i. e. where no vital flaw exists) before the state court, on similar evidence. If the issues were not fairly tried, or if important evidence exists which the trial court did not have before it, grounds would exist for exercise of discretion to re-try the factual issues. As to those issues he is required by the ruling of the Court of Appeals, unless grounds are found in the record for exercise of discretion to re-try them, to take the state court's findings, fairly made, as the basis for consideration of the constitutional issues.

■ The court now has before it the complete state court record, including those portions not before this court at the habeas corpus hearing. The question is whether that record shows any lack of fair hearing or procedural due process, or other basis for this court in its judicial discretion to consider evidence outside the state court record. On the question of vital flaw or unusual circumstance in the state court proceedings, relator's principal reliance is placed on the defective finding (No. 101) made some five months after trial, with reference to request for counsel. It is true, as relator claims, that the positive finding of no request has no support in the evidence for the time (some seven hours) prior to Chief Eagan's arrival, since the only testimony as to that period was Rogers' testimony that he had made the request. However, the burden was on Rogers, and elimination of the positive finding of no

request would leave him no better off, if the judge disbelieved his testimony, as he appears to have done. The judge ruled at the conclusion of the hearing that the confessions were voluntary, even though the formal findings were not made until months later. This court on trial of the same issue de novo credited Rogers' statement that he had asked to see his counsel, although the recollection of the police officers at that time, some two and one half years after the questioning, was that he had not made such a request. It is quite natural for their recollection after so long a period to coincide with the version they must subconsciously prefer. The probabilities are strong that a prisoner represented on another charge by able counsel of many years' experience as public defender, when questioned intermittently for hours on the commission of a capital crime would ask to see his lawyer. In that respect the subordinate findings differ. Such a finding depended on observation of Rogers on the stand and judgment as to Rogers' credibility as a witness. There was no unfairness or lack of due process in the consideration of this issue in the state court, although on similar evidence, if properly before it, this court would reach the opposite finding. It was the conclusion of the state court that the confessions were voluntary. In reaching this conclusion some weight seems to have been given to the finding that they were not so obtained as to be likely to be untrue. The majority opinion of the Supreme Court of Errors appears to give approval to the consideration of their probable truth as a factor in their admissibility. This was not, however, necessary in determining their admissibility, in view of the findings as to their voluntary character. Were these confessions the free and voluntary acts of Rogers or was his will so overborne by pressures that they should be considered the product of coercion? The state court decided the former, this court would find the latter on underlying facts found, differing in the respects mentioned, if this court were free to reject

the state court findings and try the issue de novo. The pressures used, aside from the deprivation of counsel, were not as great as those used and condemned in many cases. Yet, there was the illegal removal from the jail to the office for interrogation, the illegal holding incommunicado, denial of access to his lawyer, questioning by different officers for some eight hours intermittently in relays, the faked phone calls about his wife and children, finally succeeding by inducing Rogers to abandon his denials and make the confession, repeated the next day before the coroner. Aside from the denial of access to counsel, the other circumstances might not singly or together have broken down his resistance. On the facts as they appeared to this court, taken together, against the background of his knowledge that although he had counsel he would not be permitted to reach him, it seemed reasonable to conclude that they overbore his will to resist and brought about a confession not truly voluntary or free.

Considering the full state trial record anew, to determine whether other evidence should be considered, however, and ignoring as we must for this purpose the impressions made on the trial here, there do not appear to be any circumstances which under the limitations now applied would permit retrial here of the issue of voluntariness of the confessions. The issue of whether request for counsel was made and the issue of voluntary character of the confessions were fully and conscientiously tried by an experienced judge. Subsequent disagreement with his weighing of essentially similar evidence is not in itself sufficient under the limitations now imposed in the interest of proper balance in our dual court system, to permit consideration of the matter heard at the trial of the issue de novo here.

The writ may be discharged, the petition dismissed, and relator remanded to the custody of respondent. A certificate of probable cause for appeal may issue.

It is so ordered.