## ROGERS v. RICHMOND, WARDEN.

No. 40.   Argued November 8–9, 1960.—Decided March 20, 1961.

*Louis H. Pollak* and *Jacob D. Zeldes* argued the cause and filed a brief for petitioner.

*Abraham S. Ullman,* State's Attorney for Connecticut, and *Robert C. Zampano* argued the cause for respondent. With them on the brief was *Arthur T. Gorman,* Assistant State's Attorney.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case has a long history. It must be told with some particularity in order to unravel issues ensnarled in protracted litigation in both state and federal courts, turning essentially on the admissibility of confessions.

*The Trial.*—Petitioner was found guilty of murder by a jury in the Superior Court, New Haven County, Connecticut. The undisputed evidence leading to the conviction may be briefly told. On January 9, 1954, New Haven, Connecticut, police arrested petitioner on charges of committing attempted robbery and other crimes on that day at a local hotel. At the time of his arrest petitioner had in his possession a revolver. Subsequent ballistic tests tended to show that this weapon, which had been reported stolen from the home of petitioner's nephew, was used in a fatal shooting during a liquor store robbery in West Haven, Connecticut, on November 21, 1953, the same day its disappearance was discovered.

Petitioner was lodged in the New Haven County Jail pending trial on the charges that prompted his arrest. On January 30, 1954, he was transported without court order from the jail to the office of the State's Attorney for questioning in connection with the West Haven killing. The interrogation commenced at approximately 2 p. m. of that day and continued throughout the afternoon and evening. During the interrogation petitioner was allowed to smoke, was brought a sandwich and coffee, and was at no time subjected to violence or threat of violence.

After petitioner had been intermittently questioned without success by a team of at least three police officers from 2 p. m. to 8 p. m., New Haven Assistant Chief of Police Eagan was called in to conduct the investigation. When petitioner persisted in his denial that he had done the shooting, Chief Eagan pretended, in petitioner's hearing, to place a telephone call to police officers, directing them to stand in readiness to bring in petitioner's wife for questioning. After the passage of approximately one hour, during which petitioner remained silent, Chief Eagan indicated that he was about to have petitioner's wife taken into custody. At this point petitioner

announced his willingness to confess and did confess in a statement which was taken down in shorthand by an official court reporter.

The following morning the Coroner of New Haven County issued an order that petitioner be held incommunicado at the jail. When a lawyer associated with counsel whom petitioner had previously retained to defend him on the attempted robbery charge called at the jail to see petitioner, he was turned away on the authority of the Coroner's order. Petitioner was then transported to the County Court House for interrogation by the Coroner, who had been informed of his confession of the previous night. There he was put on oath to tell the truth but warned that he might refuse to say anything further and advised that he might obtain the assistance of counsel. Petitioner again confessed to the shooting in a statement recorded by the same official court reporter.

Petitioner's defense at the trial was directed toward discrediting the confessions as the product of coercion. In accordance with Connecticut practice, see, *e. g., State* v. *Willis,* 71 Conn. 293, 41 A. 820; *State* v. *Guastamachio,* 137 Conn. 179, 75 A. 2d 429, the trial judge heard the evidence bearing on admissibility of the confessions without the jury present. At this hearing petitioner testified that shortly after the commencement of the interrogation he asked to see a lawyer but was never permitted to do so. He also testified, with reference to Chief Eagan's pretense of bringing petitioner's wife in for questioning, that this move took the form of a threat to do so unless he confessed and that in making this threat Chief Eagan told him that he would be "less than a man" if he failed to confess and thereby caused her to be taken into custody. According to petitioner his wife suffered from arthritis, and he confessed to spare her being transported to the scene of the interrogation.

The State met petitioner's account with the testimony of Chief Eagan. He testified that petitioner made no request to see a lawyer during his presence in the room. However, it will be recalled that Chief Eagan did not arrive until the questioning had run a course of six hours and that petitioner claimed to have requested counsel during that period. Chief Eagan also denied that he had framed his remarks about bringing petitioner's wife in for questioning as a threat or that he had suggested that petitioner would be "less than a man," etc.

On the basis of the evidence summarized, the trial judge concluded that the confessions were voluntary and allowed them to go to the jury for consideration of the weight to be given them under all the circumstances that led to them. Conviction of petitioner for murder followed.

*Review by the Connecticut Supreme Court.*—On appeal, the Supreme Court of Errors of Connecticut, finding no error in the trial judge's admission of the confessions, affirmed the conviction, *State* v. *Rogers,* 143 Conn. 167, 120 A. 2d 409.

*First Federal Habeas Corpus Proceeding.*—In August of 1956, after satisfying the rule of *Darr* v. *Burford,* 339 U. S. 200, petitioner sought a federal writ of habeas corpus, basically on the ground that since the confessions were secured under circumstances rendering them constitutionally inadmissible, he was denied due process of law under the Fourteenth Amendment. The United States District Court for the District of Connecticut held a hearing based on the evidence offered by the parties. This evidence included excerpts from the record of the state proceedings as well as testimony of petitioner and various state officials. Neither petitioner nor respondent submitted the entire transcript of the state proceedings and the district judge did not call for it. Petitioner again testified that before he confessed he had requested an oppor-

tunity to confer with his lawyer. His testimony was flatly contradicted by three police officers called by the State's Attorney, none of whom had testified at the trial.

On the testimony before him, the district judge made findings which differed from those of the state trial judge in several important respects. He accepted petitioner's testimony that during the police interrogation he had asked to see his lawyer before he yielded to Chief Eagan's efforts to have him confess. He also found that the confession before the Coroner was the product of fear that repudiation of the earlier confession would lead the police to take his wife and foster children into custody. Accordingly, he concluded that "The confessions were the result of pressure overcoming Rogers' powers of resistance and were not voluntary on his part." *United States ex rel. Rogers* v. *Cummings,* 154 F. Supp. 663, 665. He therefore set aside the judgment of conviction.

*First Court of Appeals Review.*—On appeal, the United States Court of Appeals for the Second Circuit vacated the District Court's judgment, finding that it was error to hold a hearing *de novo* on issues of basic evidentiary fact that had been considered and adjudicated by the state courts. Relying on *Brown* v. *Allen,* 344 U. S. 443, the Court of Appeals concluded that the district judge should have called for the entire state record before reaching his decision. It held

> "that in the case now before us the nature of the issues presented and proper regard for the delicate balance of federal-state relationships required the District Judge to obtain and examine the State proceedings . . . . Only on an adequate state record can the District Court determine 'if a vital flaw exists which warrants correction by extrinsic evidence." *United States ex rel. Rogers* v. *Richmond,* 252 F. 2d 807, 810, 811.

The Court of Appeals remanded the case to the District Court with the following instructions:

"Unless the judge below shall find in the record thus before him material which he deems to constitute 'vital flaws' and 'unusual circumstances' within the meaning of Brown v. Allen, we hold that he should make the necessary constitutional determinations exclusively on the basis of the historical facts as found by the State trial court." 252 F. 2d, at 811.

*Certiorari Proceeding.*—The petitioner sought certiorari here and we denied the petition with this *per curiam* opinion:

"The petition for writ of certiorari is denied. We read the opinion of the Court of Appeals as holding that while the District Judge may, unless he finds a vital flaw in the State Court proceedings, accept the determination in such proceedings, he need not deem such determination binding, and may take testimony. See *Brown* v. *Allen,* 344 U. S. 443, 506, *et seq.*" *Rogers* v. *Richmond,* 357 U. S. 220.

*Second Federal Habeas Corpus Proceeding.*—On remand, the district judge had before him the entire transcript of the state proceedings and on the basis of it dismissed the petition. *United States ex rel. Rogers* v. *Richmond,* 178 F. Supp. 69. While he adhered to his belief in petitioner's testimony in the first habeas corpus hearing, he now considered himself obliged to accept the state court's "Findings," rather than his own, on all points of historical fact "unless some vital flaw or unusual circumstance exists or some other basis appears for consideration of testimony outside the record." 178 F. Supp., at 71–72. The district judge found no such "flaw" or "circumstance" to permit retrial of the issue of the voluntariness of the confessions. He thus stated his position:

"The issue of whether request for counsel was made and the issue of voluntary character of the confessions

were fully and conscientiously tried by an experienced judge. Subsequent disagreement with his weighing of essentially similar evidence is not in itself sufficient under the limitations now imposed in the interest of proper balance in our dual court system, to permit consideration of the matter heard at the trial of the issue de novo here." 178 F. Supp., at 73.

On this basis the district judge could not find that the confessions were the product of coercion.

*Second Court of Appeals Review.*—The Court of Appeals for the Second Circuit affirmed this judgment, one judge dissenting. *United States ex rel. Rogers* v. *Richmond*, 271 F. 2d 364. The court held that the district judge was correct in restricting himself to the state court's "Findings" regarding petitioner's request to see his lawyer before confessing, and agreed with him that the facts in the record did not justify the conclusion that petitioner's confessions were not voluntary.

Because issues concerning the appropriate procedure for dealing with petitions for federal habeas corpus in relation to state convictions were urged, we brought the case here. 361 U. S. 959.

A critical analysis of the Connecticut proceedings leads to disposition of the case on a more immediate issue. For it compels the conclusion that the trial judge in admitting the confessions as "voluntary," and the Supreme Court of Errors in affirming the conviction into which the confessions entered, failed to apply the standard demanded by the Due Process Clause of the Fourteenth Amendment for determining the admissibility of a confession.

Our decisions under that Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, *i. e.,* the product of coercion, either physical or psychological, cannot stand. This is so not because such confessions are unlikely to be

true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law: that ours is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth. See *Chambers* v. *Florida,* 309 U. S. 227; *Lisenba* v. *California,* 314 U. S. 219, 236; *Rochin* v. *California,* 342 U. S. 165, 172–174; *Spano* v. *New York,* 360 U. S. 315, 320–321; *Blackburn* v. *Alabama,* 361 U. S. 199, 206–207. And see *Watts* v. *Indiana,* 338 U. S. 49, 54–55. To be sure, confessions cruelly extorted may be and have been, to an unascertained extent, found to be untrustworthy. But the constitutional principle of excluding confessions that are not voluntary does not rest on this consideration. Indeed, in many of the cases in which the command of the Due Process Clause has compelled us to reverse state convictions involving the use of confessions obtained by impermissible methods, independent corroborating evidence left little doubt of the truth of what the defendant had confessed. Despite such verification, confessions were found to be the product of constitutionally impermissible methods in their inducement. Since a defendant had been subjected to pressures to which, under our accusatorial system, an accused should not be subjected, we were constrained to find that the procedures leading to his conviction had failed to afford him that due process of law which the Fourteenth Amendment guarantees.

In the present case, while the trial judge ruled that each of petitioner's confessions was "freely and voluntarily made and accordingly was admissible in evidence," he reached that conclusion on the basis of considerations that undermine its validity. He found that the pretense of bringing petitioner's wife in for questioning "had no tendency to produce a confession that was not in accord

with the truth." Again, in his charge to the jury, he thus enunciated the reasoning which had guided him in admitting the confessions for its consideration:

"No confession or admission of an accused is admissible in evidence unless made freely and voluntarily and not under the influence of promises or threats. The fact that a confession was procured by the employment of some artifice or deception does not exclude the confession if it was not calculated, that is to say, if the artifice or deception was not calculated to procure an untrue statement. The motive of a person in confessing is of no importance provided the particular confession does not result from threats, fear or promises made by persons in actual or seeming authority. The object of evidence is to get at the truth, and a trick or device which has no tendency to produce a confession except one in accordance with the truth does not render the confession inadmissible . . . . The rules which surround the use of a confession are designed and put into operation because of the desire expressed in the law that the confession, if used, be probably a true confession."

The same view—that the probable reliability of a confession is a circumstance of weight in determining its voluntariness—entered the opinion of the Supreme Court of Errors of Connecticut in sustaining the trial judge's admission of the confession:

"If we concede that this [petitioner's claims of illegal removal from jail and incommunicado detention] was all true and that such conduct was unlawful, it does not, standing alone, render the defendant's confessions inadmissible. The question is whether, under these and other circumstances of the case, that conduct induced the defendant to confess falsely that he

had committed the crime being investigated. Unless it did, it cannot be said that its illegality vitiated his confessions." 143 Conn., at 173; 120 A. 2d, at 412.

And again:

"Proper court authorization should have been secured before the defendant was removed from the jail. There is nothing about his illegal removal, however, to demonstrate that he was thereby forced to make an untrue statement. The same can be said concerning the refusal to admit counsel to see the defendant on the morning of January 31 before he was brought before the coroner." 143 Conn., at 173–174; 120 A. 2d, at 412.

Concerning the feigned phone call that petitioner's wife be brought in to headquarters, the Supreme Court concluded:

"Here again, the question for the court to decide was whether this conduct induced the defendant to make an involuntary and hence untrue statement." 143 Conn., at 174; 120 A. 2d, at 412.

From a fair reading of these expressions, we cannot but conclude that the question whether Rogers' confessions were admissible into evidence was answered by reference to a legal standard which took into account the circumstance of probable truth or falsity.[1] And this is not a

---

[1] We find support for this conclusion in a line of Connecticut cases, some of which are cited by the Supreme Court of Errors in *Rogers*. See *State* v. *Willis*, 71 Conn. 293, 307–312, 41 A. 820, 824–826; *State* v. *Cross*, 72 Conn. 722, 727, 46 A. 148, 150; *State* v. *DiBattista*, 110 Conn. 549, 563, 148 A. 664, 669; *State* v. *Palko*, 121 Conn. 669, 680, 186 A. 657, 662; *State* v. *Tomassi*, 137 Conn. 113, 127–128, 75 A. 2d 67, 74; *State* v. *Guastamachio*, 137 Conn. 179, 182, 75 A. 2d 429, 431; *State* v. *Lorain*, 141 Conn. 694, 700, 109 A. 2d 504, 507. But see *State* v. *Wakefield*, 88 Conn. 164, 90 A. 230; *State* v. *Castelli*, 92 Conn. 58, 101 A. 476; *State* v. *Zukauskas*, 132 Conn. 450, 45 A. 2d 289; *State* v. *Buteau*, 136 Conn. 113, 68 A. 2d 681; *State* v. *Malm*,

permissible standard under the Due Process Clause of the Fourteenth Amendment. The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined—a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth. The employment instead, by the trial judge and the Supreme Court of Errors, of a standard infected by the inclusion of references to probable reliability resulted in a constitutionally invalid conviction, pursuant to which Rogers is now detained "in violation of the Constitution." [2] A defendant has the right to be

---

142 Conn. 113, 111 A. 2d 685, containing no reference to a "truth-falsity" test. Connecticut case law regarding the admissibility of confessions allegedly secured under circumstances which render them involuntary, or by means of promises, "artifices," "deception" or illegal police practices not amounting to coercion, is not free from uncertainty. We need not now endeavor to ascertain the extent to which, or the circumstances under which, Connecticut courts generally look to reliability as the criterion, alone or in conjunction with other criteria, of admissibility. If petitioner in the present case has been convicted through the use of a constitutionally impermissible standard, it is indifferent that Connecticut law, in its operation in other cases, may be unimpeachable. What that law does reveal of relevance here is that conceptions of probable truth or probable falsity have had and appear still to have a place in the reasoning of Connecticut judges in classes of cases having similarities to *Rogers* and relied on therein. Without meaning to consider the validity of such reasoning, under the Fourteenth Amendment, in any applications but the one now before us, we do derive from its currency in a continuing line of Connecticut decisions confirmation of our conclusion that the language of the trial judge and of the Supreme Court of Errors in the *Rogers* case is not the product of mere verbal inadvertence or unreflective phraseology, but an accurate embodiment of the mode of reasoning which led to holding that petitioner's confessions were admissible as "voluntary."

[2] 28 U. S. C. § 2241 (c) (3).

tried according to the substantive and procedural due process requirements of the Fourteenth Amendment. This means that a vital confession, such as is involved in this case, may go to the jury only if it is subjected to screening in accordance with correct constitutional standards. To the extent that in the trial of Rogers evidence was allowed to go to the jury on the basis of standards that departed from constitutional requirements, to that extent he was unconstitutionally tried and the conviction was vitiated by error of constitutional dimension.[3]

It is not for this Court, any more than for a Federal District Court, in habeas corpus proceedings, to make an independent appraisal of the legal significance of facts gleaned from the record after such a conviction. We are barred from speculating—it would be an irrational process—about the weight attributed to the impermissible consideration of truth and falsity which, entering into the Connecticut trial court's deliberations concerning the admissibility of the confessions, may well have distorted, by putting in improper perspective, even its findings of historical fact. Any consideration of this "reliability" element was constitutionally precluded, precisely because the force which it carried with the trial judge cannot be known.

As a matter of abstract logic it is arguable that Rogers may not have been deprived of a constitutional right, nor held in custody in violation of the Constitution, within 28 U. S. C. § 2241 (c)(3), solely because the Connecticut trial court applied an impermissible constitutional stand-

---

[3] Determination of the admissibility of confessions is, of course, a matter of local procedure. But whether the question of admissibility is left to the jury or is determinable by the trial judge, it must be determined according to constitutional standards satisfying the Due Process Clause of the Fourteenth Amendment. If the question of admissibility is left to the jury, they must not be misdirected by wrong constitutional standards; if the question is decided by the trial judge, he must not misdirect himself.

ard in admitting his confession—that Rogers was not so deprived, or so held, unless "in fact" his confession was coerced, a "fact" to be ascertained from the state record on direct review here, or *de novo* by a federal district judge in habeas corpus proceedings. Such a view ignores both the volatile and amorphous character of "fact" as fact is found by courts, and the distributive functions of the dual judicial system in our federalism for the finding of fact and the application of law to fact. In coerced confession cases coming directly to this Court from the highest court of a State in which review may be had, we look for "fact" to the undisputed, the uncontested evidence of record. See *Watts* v. *Indiana,* 338 U. S. 49, 50–52. This is all that we may look to, in the absence of detailed state-court findings of historical fact, because this Court cannot sit as a trial tribunal to hear and assess the credibility of witnesses. Of course, so-called facts and their constitutional significance may be so blended that they cannot be severed in consideration. And in any event, there must be a foundation in fact for the legal result. See *Thompson* v. *Louisville,* 362 U. S. 199. With due regard to these considerations, it would be manifestly unfair, and afford niggardly protection for federal constitutional rights, were we to sustain a state conviction in which the trial judge or trial jury—whichever is charged by state law with the duty of finding fact pertinent to a claim of coercion—passes upon that claim under an erroneous standard of constitutional law.[4] In such a case, to look

---

[4] A different question was implicitly presented in *Stroble* v. *California,* 343 U. S. 181. In that case the trial judge permitted the confessions to go to the jury under instructions which told it to disregard them if it found that they were not voluntarily made, and which adequately defined the "voluntariness" required by due process. See *Lyons* v. *Oklahoma,* 322 U. S. 596, 601. Thus, there was no flaw in the verdict as rendered. An erroneous legal standard for determining the admissibility of allegedly coerced confessions was interjected into the proceeding only at the level of the Supreme

to the wholly undisputed evidence, in the event conflicting evidence is presented, would deprive the state criminal defendant of the benefit of whatever credit his testimony might have been given by the state judge or the state jury, had the judge or jury employed a proper legal standard. Nor, in a case where specific findings are made concerning the allegedly coercive circumstances, can those findings be fairly looked to for the "facts," since findings of fact may often be (to what extent, in a particular case, cannot be known) influenced by what the finder is looking for. Historical facts "found" in the perspective framed by an erroneous legal standard cannot plausibly be expected to furnish the basis for correct conclusions if and merely because a correct standard is later applied to them.

Of course, where the issue of coercion is raised not on direct review in this Court but by petition for habeas corpus in a Federal District Court, one alternative method of proceeding impossible on direct review is available. The District Court might conceivably hold a hearing *de novo* on the issue of coercion. But such a procedure would neither adequately protect the federal rights of state criminal defendants nor duly take account of the large leeway which must be left to the States in their administration of their own criminal justice. A state defendant should have the opportunity to have all issues which may be determinative of his guilt tried by a state judge or a state jury under appropriate state procedures

---

Court of California. Had the State Supreme Court, under similar circumstances reversed the conviction, not on the basis of local law but solely by reason of a misinterpretation of this Court's principles governing coerced confessions, and had the case been brought here for review on certiorari, the jury's verdict would have had to be reinstated. In any event, the question presented in *Stroble* was not faced squarely, and in illuminating isolation, in that case. Compare *Lee* v. *Mississippi*, 332 U. S. 742, with *Stroble*.

548

which conform to the requirements of the Fourteenth Amendment. Where he has not had that opportunity he should not be required to establish in a Federal District Court, before a federal district judge who must consider the issue of the voluntariness of the confession in a certain abstraction from the whole, living complex of a criminal trial, and perhaps many years after the occurrence of the events surrounding the confession, facts establishing coercion. On the other hand, the State, too, has a weighty interest in having valid federal constitutional criteria applied in the administration of its criminal law by its own courts and juries. To require a federal judge exercising habeas corpus jurisdiction to attempt to combine within himself the proper functions of judge and jury in a state trial—to ask him to approximate the sympathies of the defendant's peers or to make the rulings which the state trial judge might make, within the exercise of his discretion concerning the admission of evidence at the borderline of constitutional permissibility—is potentially to prejudice state defendants claiming federal rights and to pre-empt functions that belong to state machinery in the administration of state criminal law.

In view, therefore, of the constitutionally inadequate test applied by the Connecticut courts for determining whether the confessions were voluntarily given, we need not, on this record, consider whether the circumstances of the interrogation and the manner in which it was pressed barred admissibility of the confessions as a matter of federal law.[5] In the case before us, the state trial court

[5] We do not deal in this case with a situation in which the record—taking all of petitioner's evidence, and the inferences reasonably to be drawn from it, in the light most favorable to him—nevertheless fails to make out a claim of coercion. Since the issue of voluntariness might fairly have gone either way on the whole of the testimony, petitioner has clearly been prejudiced by the application of an erroneous standard to his federal claim by the state trial judge in allowing the confessions to go to the jury.

misconstrued the applicable law of the Constitution and was sustained in doing so by Connecticut's Supreme Court. It was error for the court below to affirm the District Court's denial of petitioner's application for habeas corpus. The case is remanded to the Court of Appeals to be held in order to give the State opportunity to retry petitioner, in light of this opinion, within a reasonable time. In default thereof the petitioner is to be discharged.

*Reversed.*

Mr. Justice Stewart, whom Mr. Justice Clark joins, dissenting.

Although the matter is not free from doubt, I accept the Court's conclusion that both state courts gave some weight to the probable truth of the confessions in determining that they were voluntary.* But I cannot accept the proposition that the petitioner is entitled to his release by way of federal habeas corpus merely because of the state courts' failure properly to verbalize the correct Fourteenth Amendment test of admissibility. Cf. *Stroble* v. *California,* 343 U. S. 181.

The writ can be extended to Rogers only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2241 (c)(3). See *Johnson* v. *Zerbst,* 304 U. S. 458, 465–468; *Hawk* v. *Olson,* 326 U. S. 271, 274–276. In the context of the present case this means that the writ should be granted, if, and

---

*In Connecticut the jury plays no part in determining the voluntariness of a confession. Connecticut follows the orthodox rule of leaving the determination of admissibility exclusively to the trial judge. *State* v. *McCarthy,* 133 Conn. 171, 177, 49 A. 2d 594, 597; *State* v. *Guastamachio,* 137 Conn. 179, 182, 75 A. 2d 429, 431; *State* v. *Lorain,* 141 Conn. 694, 699, 109 A. 2d 504, 507. Compare *Stein* v. *New York,* 346 U. S. 156. If a confession is admitted, the jury is left to weigh its truthfulness as it weighs other evidence. There is no claim in this case of any error in the instructions to the jury.

only if, a coerced confession was in fact admitted at the trial. See *Leyra* v. *Denno,* 347 U. S. 556. I think, as did the District Court, that in deciding that question the appropriate inquiry for the habeas corpus court is not what test of admissibility the State applied or purported to apply, but whether a confession was admitted which was in fact involuntary under Fourteenth Amendment standards.

I would, therefore, remand the case to the District Court for a plenary hearing to determine this question. Where, as here, the state trial court's determination of admissibility was at least partly affected by the impermissible factor of probable reliability, I think there can be no question of the federal court's duty to hold such a hearing. While the state court's failure to enunciate the correct standard was not itself an error of constitutional dimensions, it did make impossible the federal court's unquestioning reliance on the trial court's findings of fact. Even the most narrow view of what was said in *Brown* v. *Allen,* 344 U. S. 443, would require a plenary hearing in these circumstances.