STATE OF CONNECTICUT *v.* RAYMOND J. TRAMONT

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CR 15-4409

Argued December 16, 1963—decided March 23, 1964

*Edward R. Doyle,* of Hartford, for the appellant (defendant).

*Daniel J. Hagearty,* of Newington, assistant prosecuting attorney, for the appellee (state).

PRUYN, J. On a trial to the court, the defendant was convicted of the crime of larceny, in violation of § 53-63 of the General Statutes, and with the crime of breaking and entering with criminal intent, in violation of § 53-76, the state proceeding under § 54-196, relative to accessories, to show a violation of § 53-76. In his appeal, the defendant has assigned error in the court's failure to correct the finding, in its admitting into evidence the defendant's written statement, in its overruling of various claims of law, in its conclusions upon the facts, and finally, in its conclusion that upon all the evidence the defendant was guilty of the crimes charged beyond a reasonable doubt. In view of this last claim of error, we need not consider the claims of error addressed to the finding; we review the entire evidence, having regard to the finding only as indicating the court's decision on conflicting evidence. *State* v. *Pundy,* 147 Conn. 7, 8; *State* v. *Guilfoyle,* 109 Conn. 124, 139.

The evidence, in the light of the finding with such corrections as the defendant would appear to be

entitled to, reveals the following facts. In the evening, at about 8 p.m. on April 20, 1963, the defendant and his younger brother, Thomas, left their home for Wethersfield Cove in a car driven by the defendant. He had recently turned eighteen years of age; Thomas was sixteen years old. The defendant was dominated by Thomas and was loyal to him. Thomas was very interested in boats; the defendant was interested in cars and had no interest in boats. At Thomas' suggestion they went instead to Helm's marine store in Rocky Hill for some fiber glass for a boat which Thomas was building. The defendant let Thomas out at Helm's, then drove around and parked in a driveway near Helm's store with the car lights turned out. Thomas went up to the front door of the store, which was lit by night-lights, brighter than normal. The store was closed, and the employee whom the boys knew was usually there in the evening was not there. Thomas then went to the back door, entered the store, removed sundry boat articles, piled them by the side of the road and went to look for the defendant. On seeing Thomas, the defendant tooted his horn and drove to where the articles were; Thomas put the articles in the car. They then drove off to the Wethersfield shopping center, Thomas telling the defendant that he had stolen the articles. The defendant did not believe him. In the parking lot of the shopping center, they stopped and examined the articles; the defendant then suggested to Thomas that the articles be returned. At that point the police checked the car; they began to question the boys at about 9:30 p.m. The boys were handcuffed, separated from each other, and taken to the Wethersfield police station, where they were fingerprinted and "mugged" at about 10:45 p.m. They were then taken to the Rocky Hill police station. The defendant was advised of his constitutional rights. He was in the custody

of the police continually from 9:30 p.m. until 1:45 the following morning, when he signed the statement which was admitted into evidence. The defendant made several requests to the police, during the course of the night, for permission to use the telephone to contact his parents and counsel. The police refused all such requests until after the statement was signed, when, at 2 a.m., the defendant was allowed to use the telephone. He was booked after he signed the statement. One of the police officers promised that the defendant could go home if he signed the statement. Another police officer threatened that if the defendant did not sign the statement the registration of his father's car would be suspended.

The defendant principally attacks, as being in violation of the due process clause of the fourteenth amendment to the United States constitution, the admission of his statement into evidence, on the ground that it was involuntary and had been induced by threats and promises, and the denial of his request for counsel.

The admissibility of a confession is determinable by the trial court, but the determination must be made according to constitutional standards which satisfy the due process clause of the fourteenth amendment. *Rogers* v. *Richmond*, 365 U.S. 534, 545. The ultimate test of admissibility is the voluntariness of the confession. *Culombe* v. *Connecticut*, 367 U.S. 568, 602; *State* v. *Traub*, 151 Conn. 246, 249.[1] The state must prove as a prerequisite to admissibility that under all the circumstances the confession was voluntary. *State* v. *Traub*, supra. Many are the circumstances which may enter into such

---

[1] Certiorari denied, 377 U.S. 960.

a determination. "The line of distinction is that at which governing self-direction is lost and compulsion, of whatever nature or however infused, propels or helps to propel the confession." *Culombe v. Connecticut,* supra. It is a difficult task for the courts to reconcile the responsibility of the police in ferreting out crime with the defendant's right to a trial according to constitutional standards. *Culombe v. Connecticut,* supra, 569. "The line between proper and permissible police conduct and techniques and methods offensive to due process is, at best, a difficult one to draw, particularly . . . where it is necessary to make fine judgments as to the effect of psychologically coercive pressures and inducements on the mind and will of an accused." *Haynes v. Washington,* 373 U.S. 503, 515.

The facts in each case must be closely scrutinized. *Gallegos v. Colorado,* 370 U.S. 49, 52. The courts have held that cases of this kind may turn on circumstances such as the youth of the accused; *Haley v. Ohio,* 332 U.S. 596; his lack of experience with police procedures; *Reck v. Pate,* 367 U.S. 433, 442; the length of the questioning; *Spano v. New York,* 360 U.S. 315; *Haley v. Ohio,* supra (five hours); refusal to allow the accused to consult parents, counsel or friends; *Gallegos v. Colorado,* supra, 55; *Culombe v. Connecticut,* supra, 601, 631; *Haley v. Ohio,* supra, 600; threats against his family; *Harris v. South Carolina,* 338 U.S. 68; *Lynumn v. Illinois,* 372 U.S. 528, 534; and promises or inducements; *Haynes v. Washington,* supra, 513.

During the course of the trial, the court indicated that there was no requirement that the defendant be allowed to consult counsel before the investigation was completed. The defendant was first interrogated at 9:30 p.m.; then at 10:45 p.m. he was

fingerprinted and "mugged" at the Wethersfield police station; thereafter, he was taken to the Rocky Hill police station, where his statement was not signed until 1:45 a.m. The fingerprinting and "mugging" at 10:45 p.m. indicates that the police investigation had been completed by that time, and while the defendant had not then been formally booked, he had as a practical matter been arrested. We have recently set aside a conviction where the accused was denied the right to counsel after the police investigation had been concluded. In *State* v. *Krozel*, 24 Conn. Sup. 266, we reviewed the pertinent authorities in great detail and concluded that an accused is entitled to have counsel in the pretrial proceedings after the completion of the police investigation, under the circumstances. The privilege against self-incrimination enjoys a high place in our society. "The right of an accused to counsel as a procedural safeguard in our system of government enjoys equal eminence. . . . one of the most important protections which counsel can confer while his client is being detained by the authorities is to preserve his client's privilege against self-incrimination and prevent the deprivation of that and other rights which may ensue from such detention." *People* v. *Donovan*, 13 N.Y.2d 148, 151. This is especially appropriate in respect to the defendant in the case before us.

We have an eighteen-year-old boy, inexperienced in the ways of the police, with no previous record, handcuffed almost immediately on being first questioned by the police, held virtually incommunicado for over four hours, fingerprinted and "mugged" not long after being taken to the Wethersfield police station, and denied permission to communicate with parents or counsel. The police told him that he could go home only after the statement was signed and threatened that his father's registration of the automobile would be taken away. We conclude

that under the totality of the circumstances the confession was not voluntary and its admission into evidence was prejudicial to the defendant.

Apart from the confession, our review of the entire remaining evidence leads us to the conclusion that the evidence and all the reasonable inferences to be drawn therefrom were not sufficient to establish the defendant's guilt on either of the two counts beyond a reasonable doubt.

The view we have taken of this case makes it unnecessary to consider the remaining assignments of error.

There is error, the judgment is set aside and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion DEARINGTON and LEVINE, Js., concurred.