**David Earl COMBS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–81–0206–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 4, 1982.

Rehearing Denied March 11, 1982.

Discretionary Review Granted
June 2, 1982.

Gladys R. Goffney, Carol J. Carrier, Houston, for appellant.

Ray Elvin Speece, Houston, for appellee.

Before BASS, SMITH and DYESS, JJ.

BASS, Justice.

This is an appeal from a conviction of murder, wherein punishment was assessed at 20 years confinement.

Appellant, a seventeen-year-old, mentally retarded individual, had been babysitting the five young children of a friend on the evening of December 31, 1980. He bathed the two-year-old deceased child that evening after the child had "messed in her pants." The next morning the child was found dead by the other children on the

floor in the living room. The appellant walked to a relative's home to summon help. During this time, one of the other children alerted a neighbor who called the police. When the appellant returned to the scene with his relative and police officers, the Houston police officers were there. They arrested the appellant for murder. At that time, the appellant was read a police blue card warning by an officer. At about 4:30 P.M. that afternoon, a magistrate was summoned to the juvenile division to give the appellant his constitutional warnings. The magistrate spent between twenty and twenty-five minutes reading and explaining the warnings to the appellant because it was obvious to the magistrate that the appellant was slow in his understanding. The appellant did not request a lawyer. The assistant district attorney thereafter arrived to interrogate the appellant. Because the appellant could neither read nor write, the assistant district attorney decided to take the confession on a tape recorder. The appellant's confession was taped over a period of a couple of hours. The tape was transcribed, and the appellant finally signed the confession in the early hours of the next morning. At no time during the period of interrogation did the appellant have the benefit of counsel nor were any members of his family present. The appellant's confession was witnessed by two police officers and the assistant district attorney who took the confession.

In his confession, the appellant gave conflicting accounts of what had happened on the evening of December 31, 1980. At one point he admitted to holding the child's head under the water and drowning her in the bathtub. At another point, he testified that he left the baby alone in the tub while he went to search for her clothes, and she began to drown. He said that he lifted her out of the tub and squeezed the water out of her stomach. The baby seemed to be all right and was walking around after the incident. When he put her to bed that night, she seemed fine, but the next day she was dead. He took her out of her bed and placed her on the floor in the living room.

On January 3, 1981, two days after his arrest, it was discovered by the district attorney's office that the confession signed by the appellant was defective in that the warnings on the face of the instrument did not conform to the provisions of the Texas Code of Criminal Procedure. The appellant was brought back to the juvenile division from his jail cell, and he was asked to re-sign the confession which had been amended with the proper warning provisions. The appellant was again told of his rights, but he did not request a lawyer, and the appellant re-signed the warnings and confession.

The appellant raises a number of grounds of error on appeal. Three of these grounds, of significant constitutional proportions, require a reversal.

The appellant contends in four grounds of error that the trial court erred in admitting into evidence, over the appellant's timely objection, the appellant's confession. He argues that his confession was involuntary and in violation of his right against self-incrimination, because he did not knowingly and voluntarily waive his rights to counsel and to remain silent.

Grounds of error 2, 3 and 4 contend that the confession was taken from the appellant in violation of Article 38.22 of the Texas Code of Criminal Procedure and the United States Constitution.

Article 38.22 reads:

Section 1. On this Article, a written statement of an accused means a statement signed by the accused.... if the accused is unable to write, a statement bearing his mark, when the mark has been witnessed by a person other than a Peace Officer. Section 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.-17 of this code or received from the per-

son to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

The assistant district attorney made the tape recording of the appellant's confession, had the tape recording reduced to writing, and secured the signatures of the appellant and the witnesses thereupon.

We must decide whether or not the confession meets the requirements set forth in the article set out above; that is, does the appellant's signed statement comply with the provisions of Section 1, Section 2, sub-section (a), sub-subsections (1), (2), (3), (4), (5) and subsection (b).

We shall first deal with Section 2, subsection (a) and sub-subsections (1), (2), (3), (4) and (5).

The written, signed statement by the appellant shows on its face that: a) the appellant, prior to making the statement, received the warning provided by Article 15.-17 of the Code from a magistrate and from the person to whom the statement was given. The evidence shows that the appellant was given the warning before the statement was made, and that the appellant was given the warning by the assistant district attorney at the time the statement was given and signed. It therefore appears that the appellant has received the statutory warnings that are required.

The question resolves to whether: the appellant 1) prior to and 2) during the making of the statement, a) knowingly, b) intelligently, and c) voluntarily, waived the rights enumerated in Section 2(a), (1), (2), (3), (4) and (5) of Article 38.22.

■■■ The evidence shows that "prior to" and during the statement the appellant received the warnings from 1) the police officers at the apartment where the appellant was arrested, 2) a magistrate at the Juvenile Division of the Houston Police Department, and 3) from the assistant district attorney at the location where the statement was taken. Did the appellant "knowingly" waive the rights of those warnings? "Knowingly," in this context, must of necessity mean "An intellectual, conscious understanding, by thought process and reason, of the releasing of, or the absolute surrender of, a right, or of a constitutionally granted guarantee; and, the understanding of the effects of waiving such a right of a constitutionally granted guarantee." (The term "knowingly," in this context, is defined herein by the writer, for the reason that the term "knowingly" as defined in article 6.03(b) of the Penal Code of Texas, defines such term in the context of a "criminal intent," a "mens rea," rather than as a surrender of a constitutional guarantee). We shall review the evidence, with this definition in mind, to determine whether the appellant "knowingly" waived his rights to the statutory warnings guaranteed him.

The evidence shows that:

1) When the rights were read to him he left his head bowed, not looking at the person reading him those warnings;

2) The appellant only looked up on occasions at a pause or resistance or on a request;

3) The appellant is a mentally retarded individual who had a functioning age level of 5 to 8 years;

4) The appellant had an intelligence score from 55 to 70;

5) The appellant had been placed in at least two mentally retarded homes or schools;

6) The appellant had difficulty in remembering;

7) The appellant might be able to understand if large amounts of time were taken with him;

8) The appellant might be able to understand if simple words were used with him;

9) The appellant was taking medications prescribed for him of 50 mgs of thorazine;

10) The appellant was unable to read or write (which fact was determined by an assistant district attorney before the confession was taken);

11) The appellant was asked at a point in the confession if he wanted to say anything else concerning the death of the child to which he replied "No"; and then shortly thereafter, a new line of interrogation and replies thereto were recorded; and,

12) When the appellant was asked about his understanding of his rights and about the provisions of the warnings, such as the use of such terms as "used in evidence in court," "appointed," "lawyer," etc., the appellant did not know what they were or what they meant.

From the evidence of all parties testifying in court, it appears that the appellant never had a full realization of "knowingly" waiving his statutory and constitutional warnings.

The next question is whether the appellant "intelligently" waived his rights set out in the statutory warnings.

The same evidence set forth above in paragraphs 1 through 12 apply in determining this question.

The intelligence level of the appellant was between 5 and 8 years, i.e., from a first grade education to a third grade education, at the very best. From the evidence of all parties, testifying in court, it appears that the appellant never acquired a full "intellectual" understanding of waiving his statutory and constitutional warnings.

The next question is whether the appellant "voluntarily" waived his rights set out in the statutory warnings.

The United States Supreme Court has set forth some guidelines to determine the "voluntariness" of a confession:

To be voluntary a confession must be "the product of an essentially free and unconstrained choice." *Culombe v. Connecticut,* 367 U.S. 568; 81 S.Ct. 1860; 6 L.Ed.2d 1037 (1961). "The product of a rational intellect and a free will." *Blackburn v. Alabama,* 361 U.S. 199; 80 S.Ct. 274; 4 L.Ed.2d 242 (1960). The decision to confess must be "Freely self-determined." *Rogers v. Richmond* 365 U.S. 534; 81 S.Ct. 735; 5 L.Ed.2d 760 (1961), Nor can his "capacity for self-determination (be) critically impaired." *Culombe v. Connecticut,* 367 U.S. at 602; 81 S.Ct. at 1879; 6 L.Ed.2d 1037 (1961). "The ... voluntariness of a confession turns on the effect of the totality of the circumstances on the defendant's will.' *United States v. Ballard,* 586 F.2d 1060 (5th Cir. 1978).

A person, like the appellant, whose verbal intelligence is limited will be less likely than the average person to be able to understand his rights to have an attorney, to remain silent, to stop an interview, and to not make any statement and to understand that a statement may be used against him at his trial. He may, and probably will, be unable to insist effectively that these rights be fully observed.

We conclude, based on the foregoing, that the appellant did not, prior to and during the making of his confession (statement), knowingly, intelligently, and voluntarily waive the rights set out by Section 2, subsection (a), sub-subsections (1), (2), (3), (4) and (5) of Article 38.22, of the Texas Code of Criminal Procedure.

Therefore, appellant's grounds of error 2, 3 and 4 are sustained.

■ Ground of error 7 complains that the trial court failed to grant a mistrial on appellant's motion complaining of the State's failure to prove the cause of death.

The autopsy report prepared and signed by Dr. Bucklin, a Pathologist, concluded that the child died of drowning.

The pathologist, Dr. Bucklin, testified: that he came to the conclusion of death by drowning as a result of his autopsy examination and information furnished him that "a suspect drowned the child in a bathtub"; that if he had received some photographs of the deceased child taken at the scene where the child was found (which he later viewed) and information that the deceased child had walked around after her bath (and not actually drowned while being bathed), under those circumstances he might have found another cause of death, such as a convulsion, heart attack or drug attack. On re-direct examination of the pathologist by the State's attorney, a question phrased to the doctor was: "If some information, if it were true that someone lived after a drowning episode, then you would have to alter your opinion?" The pathologist replied, "That's perfectly correct."

The State's witness, a boy about eight-years-old, testified on cross-examination "that his sitter walked the deceased around a little bit and he put her to bed." Then a sister testified that the deceased girl was out of the bathtub when she went to get her a dress, that she was standing in the hallway, and that she went into the living room and sat down.

The appellant testified that the deceased girl walked around after getting out of the bathtub. There was testimony from three witnesses that the deceased girl walked around after getting out of the bathtub. Based on this evidence, together with the testimony of the pathologist that he would have to alter his opinion if it were true that someone lived after a drowning episode, the court should have granted a mistrial.

The appellant's ground of error 7 is sustained.

We have considered grounds of error 1, 5, 6, 8, 9, and 10. In view of our decision on the grounds of error 2, 3, 4, and 7, we do not need to fully discuss them, other than to say that they do not show any reversible error.

The case is reversed and remanded for a new trial.