No. 89–6126.   DEGRAFFENREID *v.* MCKELLAR, WARDEN, ET AL.
C. A. 4th Cir.   Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins, dissenting.

"[O]urs is an accusatorial and not an inquisitorial system—a system in which the State must establish guilt by evidence independently and freely secured and may not by coercion prove its charge against an accused out of his own mouth." *Rogers* v. *Richmond,* 365 U. S. 534, 541 (1961).   Because the court below failed to examine fully whether petitioner's confession was obtained by inquisitorial means condemned by the Due Process Clause, I would grant certiorari in this case to clarify the nature of the voluntariness inquiry.

In 1973, Claude Killian was murdered.   Police questioned petitioner Ray Charles Degraffenreid shortly after the murder, but he was not then charged.   In 1977, Degraffenreid was arrested for Killian's murder while incarcerated in state prison on an unrelated conviction.   Five days later, he confessed to law enforcement officials.   At Degraffenreid's first trial, the state court granted his motion to suppress his confession as involuntary, and the jury was unable to reach a verdict.   At Degraffenreid's retrial, a different judge admitted the confession.   Degraffenreid was convicted of murder and sentenced to life imprisonment.   His conviction was affirmed on appeal by the South Carolina Supreme Court.   Degraffenreid then sought state postconviction relief, which was likewise denied.

In this federal habeas petition, petitioner renews his challenge to the admission of his confession.   The District Court referred the petition to a Magistrate for findings of fact and recommendations.   After conducting an evidentiary hearing, the Magistrate found that the State had failed to prove that the confession was voluntary.   The District Court refused to adopt the Magistrate's recommendation on the ground that the Magistrate incorrectly allocated to the State the burden of proof regarding voluntariness. A divided panel of the Court of Appeals for the Fourth Circuit affirmed, 883 F. 2d 68 (1989), and the full court denied rehearing en banc by a vote of 6 to 5.

The record in this case is replete with factual findings by various state and federal judges. The Magistrate's findings, which set forth the essential and undisputed facts, are as follows:

"[P]etitioner was held incommunicado for three (3) to five (5) days in solitary confinement. He had no exercise, no visitors, no telephone calls. He ate, slept, bathed, and existed within this one cell. There were no magazines, radios, television, books or other diversions. The only window was an observation window in the cell door which when open revealed the hall and the door to the sheriff's office. The only time the petitioner was taken out of this reportedly cold cell was for questioning.

"The only safeguard taken to protect the petitioner's rights was the giving of *Miranda* warnings. Despite the presence of judicial officers on the grounds of the facility and procedures for transporting prisoners to other court officials, the petitioner was not taken before a judicial officer, was not appointed an attorney and was not given any conditions of release until after he confessed." App. to Pet. for Cert. A–45.

It is also uncontested that prison officials placed a notice on the wall of the prison facility indicating that petitioner was to have no visitors or phone calls. From these facts the Magistrate concluded that "despite the advice of rights, the only way the petitioner was going to be released from solitary confinement and allowed contact with third parties was to give a confession." *Id.*, at A–47.

The Court of Appeals did not reject this account of the facts and indeed noted that "[t]he delay in taking Degraffenreid before a judicial officer should not be sanctioned as ideal procedure." *Id.*, at A–9. The court nonetheless ruled that Degraffenreid failed to establish "that the circumstances surrounding the confession were sufficiently egregious to cause Degraffenreid's will to be overborne." *Ibid.*

In *Miller* v. *Fenton*, 474 U. S. 104 (1985), we held that "the ultimate question of the admissibility of a confession merits treatment as a legal inquiry requiring plenary federal review." *Id.*, at 115. We identified two distinct questions that courts must ask in determining "voluntariness": "whether the techniques for extracting the statements, as applied to *this* suspect, are compatible with a system that presumes innocence and assures that a conviction will not be secured by inquisitorial means [and] whether the defend-

ant's will was in fact overborne." *Id.*, at 116 (citing *Gallegos* v. *Colorado*, 370 U. S. 49, 51 (1962)). These two inquiries safeguard two fundamental societal interests. The first inquiry ensures that inquisitorial means do not infect the criminal process. See *Gallegos, supra*, at 51. It is premised on our abiding belief "that the forfeiture of the lives, liberties or property of people accused of crime can only follow if procedural safeguards of due process have been obeyed." *Chambers* v. *Florida*, 309 U. S. 227, 237 (1940); see also *Miller, supra*, at 109 ("This Court has long held that certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment"). The second inquiry, by focusing on whether a defendant's will was in fact overborne, safeguards the Fifth Amendment right to be free from compelled self-incrimination. See *Gallegos, supra*, at 51.

In this case, the Court of Appeals focused solely on the second inquiry and failed to decide whether, as a matter of due process, the police efforts in this case were impermissibly inquisitorial. This analysis is essential because some police techniques, whether or not they actually overbear a defendant's will, are repugnant to our adversarial system and cannot lay the foundation for a criminal conviction. *Brown* v. *Mississippi*, 297 U. S. 278, 286 (1936) ("The due process clause requires 'that state action . . . shall be consistent with the fundamental principles of liberty and justice which lie at the base of all our civil and political institutions'") (quoting *Hebert* v. *Louisiana*, 272 U. S. 312, 316 (1926)); *Rogers*, 365 U. S., at 540–541 (the Due Process Clause requires suppression of confessions improperly obtained "not because such confessions are unlikely to be true but because the methods used to extract them offend an underlying principle in the enforcement of our criminal law"). Here, law enforcement officials isolated petitioner from the outside world and made unmistakably clear that his incommunicado detention would end only with his confession. Cf. *Haynes* v. *Washington*, 373 U. S. 503, 514 (1963) ("We cannot blind ourselves to what experience unmistakably teaches: that even apart from the express threat, the basic techniques present here—the secret and incommunicado detention and interrogation— are devices adapted and used to extort confessions from suspects"). Such techniques arguably do not conform "to the fundamental

standards" of our criminal justice system. *Chambers, supra,* at 238. Because the Court of Appeals did not consider that possibility, I would grant certiorari in this case to clarify the dual nature of our voluntariness inquiry.