RENDELL, Circuit Judge,
Dissenting.
Because I believe that the circumstances surrounding Vidal’s interrogation amounted to a custodial setting, I respectfully dissent. Line drawing in these types of fact patterns is admittedly not an exact science. Discerning whether a defendant was in custody can be a challenge in some cases, but this is not one of them. Putting ourselves in the place of the reasonable person, unschooled in analyzing how many officers it takes to disincentive movement, let alone flight, Vidal was undoubtedly confined.
To my mind, the majority commits a fundamental error by viewing this case subjectively, rather than objectively as we must. Stansbury v. California, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (“Our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned.”). The panel’s observations that Vidal’s will was not overborne, that he “appeared calm,” that he offered coffee to his interrogators, and that his daughter sat on his lap, are neither necessarily appropriate indicators of Vidal’s mindset nor, more importantly, are they relevant to our analysis. What was on his mind, or his daughter’s for that matter, are simply not germane to our review.[3] Our charge is to look at the facts objectively, as the panel itself acknowledged by referencing Stansbury. The facts here, viewed objectively, indicate a custodial setting.
*864 Fourteen agents executed a search warrant at 6:15 a.m. The agents spent a total of three hours with Vidal. Three officers who had previously “visited” him surrounded him at his kitchen table and then took him to his office to get his computer. Simply put, this third visit in four months reflected an escalation in force, a “bearing down” on him. See United States v. Leese, 176 F.3d 740, 744 (3d Cir.1999) (noting that “[t]he more cause for believing the suspect committed the crime, the greater the tendency to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers Miranda”) (quoting Steigler v. Anderson, 496 F.2d 793, 799 (3d Cir.1974)). His movements around the house were closely monitored such that, objectively, could he have felt, for even one moment, able to leave the scene? Indeed, his wife was not even permitted to retrieve a book from her car for their daughter without agents accompanying her. What would one accused of tax fraud assume all these agents were trying to prevent, if not movement and flight? The fact that these events took place in Vidal’s home is of no moment. The agents effectively transformed the house into an occupied outpost.
We have “signaled our preference for an accusatorial rather than an inquisitorial system of justice.” Murphy v. Waterfront Comm’n, 378 U.S. 52, 55, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964), overruled on other grounds by United States v. Balsys, 524 U.S. 666, 690, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998); see also Rogers v. Richmond, 365 U.S. 534, 541, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (observing “that ours is an accusatorial and not an inquisitorial system” of criminal justice). Miranda makes that preference a reality. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Dickerson makes it a constitutional mandate. Dickerson v. United States, 530 U.S. 428, 444, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). Here, the prosecution convicted Mr. Vidal based on its inquisitorial tactics, because the things he admitted while sitting at that kitchen table may well have sealed his fate.[4] I do not think the majority’s reasoning does justice to this constitutional principle.

. Indeed, Vidal testified that he believed he was under arrest, and the District Court did not question his credibility.

. The accountant’s credibility was vigorously attacked by the defense, and Vidal’s admissions were emphasized in the prosecutor’s opening and closing statements.