*69 MR. JUSTICE DALY
specially concurring:
I concur with the majority opinion. I, however, find it necessary to comment on the overzealous statements contained in the dissenting opinion as they go to the roots of constitutional history.
First the allegation is made that in the Brecht case, supra, this Court used the case of Katz v. United States (1924), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, a landmark federal decision, to support the holding in Brecht. This is not true, especially in that context.
A study of the constitutional history of the Fourth Amendment will reveal that when Chief Justice Taft was head of the federal judicial system he was adamant in his belief that the Fourth Amendment was cast in nonflexible concrete.
Taft argued with Brandéis and Holmes that a telephone tap intrusion by the sovereign did not come within the protection of the Fourth Amendment because a physical intrusion or trespass into the protected enclave was required to trigger the protection of the Fourth Amendment. He explained additionally that a further test was obvious in that the telephone did not exist at the time the Fourth Amendment was written and, therefore, it was not possible to have a telephone intrusion within the contemplation of the framers of the Amendment. Brandéis and Holmes, of course, argued for flexibility.
The storm continued for many years, and, finally, the case of Katz v. United States, supra, reversed the rule in Olmstead v. United States (1928), 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (authored by Chief Justice Taft). Katz held, in essence, that the enclave position was no longer completely valid because the protection of the Fourth Amendment was a personal right and followed the person. A trespass was not a necessary element, i. e., meaning that the Fourth Amendment was not static, but rather a living, flexible, breathing part of a constitution that is subject to interpretations that will accommodate modern day technology and, hence, a document that has not worn thin with the passing of time. This is the rationale of Katz, and properly applied in a constitu *70 tional context, minus emotional involvement, it is very meaningful to this historic problem and has a rational connection.
The problem is well explained in a case not cited by the dissent, State v. Coburn (1974), 165 Mont. 488, 530 P.2d 442, and I quote therefrom:
“ ‘The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.’ [Burdeau v. McDowell (1921), 256 U.S. 465, 475, 41 S.Ct. 574 [576], 65 L.Ed. 1048.] (Emphasis added.)
“A fair analysis of the arguments would seem to imply that the position of the parties was much the same as that expressed by Chief Justice Taft, writing for the majority in a five-four decision, Olmstead v. United States, 277 U.S. 438 [473], 48 S.Ct. 564 [570], 72 L.Ed. 944, 954 (1928), a telephone intrusion case by federal officers, where he held the Fourth Amendment not subject to application beyond the intent of the framers of the amendment and its words could not be stretched to be given a meaning to include ‘intangible’ and trespass was a requirement to invade the protected property.
“All parties in the instant case have avoided any analysis of Katz in which, Justice Black in his dissenting opinion proclaims that the majority in Katz have ‘rewritten the Fourth Amendment.’ Justice Black in his dissent also relied heavily on Olmstead.
“It would appear then that the arguments based on strict interpretation, origin, history, and intent of the authors as they concern the Fourth Amendment are highly diluted since Katz in 1967. The majority in Katz recognize that the former decisions of the Court foreclosed Fourth Amendment inquiry when penetration or *71 trespass was absent, citing Olmstead and Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322, for the Amendment was thought to limit only searches and seizures of tangible property and property rights controlled. The majority, in Katz, cited Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed. 734, as the departure from that narrow view and included intangibles as well. It went on to hold that the Fourth Amendment protects people and not simply ‘areas’ and therefore the reach of the Fourth Amendment cannot turn upon the presence or absence of physical intrusion into any given enclosure, and the trespass doctrine in Olmstead and Goldman can no longer be controlling.
“This then demonstrates a radical departure from the accepted meaning of the words of the Fourth Amendment which controlled for over a period of 40 or more years, since Olmstead. It further demonstrates that these traditional concepts are not static. This is not a new concept by any means. In Olmstead, many years ago, among the four dissenting justices, Brandéis observed in reference to interpretation on the same subject as Katz:
“ ‘Clauses guaranteeing to the individual protection against specific abuses of power, must have a similar capacity of adaptation to a changing world. It was with reference to such a clause that this court said in Weems v. United States, 217 U.S. 349, 373, 30 S.Ct. 544, 551, 54 L.Ed. 793, 801: “Legislation, both statutory and constitutional, is enacted, it is true, from an experience of evils, but its general language should not, therefore, be necessarily confined to the form that evil had theretofore taken. Time works changes, brings into existence now conditions and purposes. Therefore a principle to be vital must be capable of wider application than the mischief which gave it birth. This is peculiarly true of Constitutions. They are not ephemeral enactments, designed to meet passing occasions. They are, to use the words of Chief Justice Marshall, ‘designed to approach immortality as nearly as human institutions can approach it.’ The future is their care and provision for event of good and bad tendencies of which no prophecy can be made. In the application of a Constitution, therefore, our contemplation cannot be only of what has been but of what may be. *72 Under any other rule a Constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality.” ’ (Emphasis added.)
“So far as privacy is concerned, Katz recognized the Fourth Amendment was not a general right of privacy but the right was contained in the Fourth and several other amendments, the First, Third and the Fifth, and as stated in Katz at p. 350 of 389 U.S., at p. 511 of 88 S.Ct., at p. 581 of 19 L.Ed.2d in reference to the right of privacy: ‘. . . his right to be let alone by other people — is, like the protection of his property and of his very life, left largely to the law of the individual States.’
“In Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court noted that the Fourth and Fifth Amendments were very closely tied and the unreasonable search and seizure of the Fourth Amendment almost always compels a man to give evidence against himself which is condemned in the Fifth Amendment. In this regard the Fourth and Fifth Amendments almost run into each other. This adds to the problem the fact that a violation of the Fifth Amendment rights, whether private or government, is condemned in all courts, military and civil. Haynes v. Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961); Payne v. Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958).
“Concerning the exclusionary rule itself, it would be well to consider first that the ‘exclusionary rule’ is a court adopted rule resting on the ‘rule making’ and ‘supervisory power’ of the Supreme Court over the other courts and has no roots in the constitution or the statutes of the state of federal government. (Dissent in Katz by Justice Black and citing Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782; Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933; Elkins v. United States, 364 U.S. 206 [216, 221, 223], 80 S.Ct. 1437 [1443, 1446, 1447], 4 L.Ed.2d 1669, 1677, 1680, 1681 (1960)).
*73 “The fact that the rule is characterized as not satisfactory and the state in argument recommended that a tort remedy for the aggrieved was adequate, simply ignores that all of the cases which declare the rule as a deterrent because the wrong cannot be corrected or compensated, but merely avoided in the future, must have recognized that there could be no price placed on a constitutional right.” State v. Coburn, 165 Mont. at 496-499, 530 P.2d 442.
Further, I would only say that the dissent, as it speaks to the right of privacy contained in the Constitution of the State of Montana, can only be characterized a personal feeling, as the comments are lacking any recognized supporting authority.
As the dissent speaks to the exclusionary rule, it accuses the Court of elevating the rule to a constitutional position. I think if time were taken to read State v. Coburn, supra, the confusion would disappear, and the Court’s position would be apparent. It makes no difference in the constitutional history of the rule or its application to Montana law by the United States Supreme Court that the Montana Legislature continues to attempt to legislate in that area. It is their prerogative; and, as day follows night, it is this Court’s duty to examine the legislative product for constitutional defect.