741 F.2d 76
 Floyd M. DOBY, Jr., Appellant,
v.
SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Commissioner
William Leeke, Warden George Martin and State of
South Carolina and the Attorney General
of the State of South
Carolina, Appellees.
 No. 84-6009.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 8, 1984.
Decided Aug. 16, 1984.
 
 1
 John I. Mauldin and Stephen J. Henry, Greenville, S.C., for appellant.
 
 
 2
 T. Travis Medlock, Atty. Gen. and Donald J. Zelenka, Asst. Atty. Gen., Columbia, S.C., for appellees.
 
 
 3
 Before MURNAGHAN and SPROUSE, Circuit Judges, and HALLANAN, District Judge.*
 
 HALLANAN, District Judge:
 
 4
 This is an appeal from the district court's denial of Appellant's petition for a writ of habeas corpus. Following a jury trial in South Carolina State Court, Appellant was convicted of murder. His conviction was affirmed by the Supreme Court of South Carolina on October 3, 1979. State v. Doby, 273 S.C. 704, 258 S.E.2d 896 (1979), cert. denied, 444 U.S. 1048, 100 S.Ct. 739, 62 L.Ed.2d 735 (1980). Appellant's main contention on appeal is that the trial court impermissibly relied upon the truth of his confession in deciding to admit it, thus directly violating the mandates of Rogers v. Richmond, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). We agree with Appellant and reverse the district court.
 
 
 5
 The facts pertinent to this appeal concern the in camera hearing held during Appellant's state court trial for the purpose of determining the voluntariness of Appellant's confession. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). At the hearing, Appellant presented several psychiatrists who testified to facts regarding Appellant's psychological make-up and intellectual capacity. The purpose of such testimony was to show that Appellant was mentally deficient and, therefore, was unable to understand his Miranda rights so as to knowingly and intelligently waive them.
 
 
 6
 During the psychiatrists' testimony, the trial judge posed questions that strongly suggest he was concerned with whether Appellant had been truthful in giving his confession. For example, Judge Gentry asked Dr. Camp: "When he [Appellant] said that he did commit the crime, is it possible that he was telling the truth?" Joint Appendix at 136. Again, the trial judge asked Dr. Camp: "Is it reasonable to assume that he [Appellant] was there and did it?" Id. at 147.
 
 
 7
 Following this psychiatric testimony, the defense counsel argued to the trial court that it should consider this evidence on the issue of the voluntariness of Appellant's waiver of his Fifth and Sixth Amendment rights. At this time the trial court and defense counsel engaged in the following dialogue:
 
 
 8
 [Defense Counsel--Mr. Allen]
 
 
 9
 I feel like that the Court should consider the most relevant things we've brought out, not only Floyd's testimony both direct and cross, not so much what the questions were, but what the Court saw, and how he responded.
 
 
 10
 And also the doctors' background information on him, his performance level in school, his IQ, his psychological diagnosis, and all these things just go to the fact that he could not have intelligently waived his Miranda rights. That's really the only issue we're talking about.
 
 
 11
 THE COURT: How about the truth?
 
 
 12
 MR. ALLEN: Sir?
 
 
 13
 THE COURT: How about the truth? Truth.
 
 
 14
 MR. ALLEN: I don't understand the question.
 
 
 15
 THE COURT: How about the truth? you say we're not concerned with anything except his understanding of his Miranda rights.
 
 
 16
 MR. ALLEN: In this hearing.
 
 
 17
 THE COURT: Oh, yeah, yeah.
 
 
 18
 Do you have any law on the middle ground between truth and legal right?
 
 
 19
 MR. ALLEN: No sir, I mean--
 
 
 20
 THE COURT: Is there any?
 
 
 21
 MR. ALLEN: Explain your question, please, I don't understand it.
 
 
 22
 THE COURT: Do you have any law on the middle ground between truth and legal right? I don't think I've ever seen any, have you?
 
 
 23
 MR. ALLEN: No sir, I haven't. I'm not sure exactly what the Court's asking, but I do have the law on the fact--
 
 
 24
 THE COURT: That's the dilemma that I'm in.
 
 
 25
 MR. ALLEN: Well, sir, it seems certainly arguable--
 
 
 26
 THE COURT: It's a real dilemma.
 
 
 27
 MR. ALLEN: --and goes to the totality of the circumstances, and these officers, being officers of the Court as you and I are, should have provided that man, after they saw; and they can't deny that they saw the type of person Fooyd [sic] is, that is readily apparent, I don't think any one would deny that; even after seeing that they did not afford him counsel, because Floyd didn't know to ask for it, because he didn't understand it.
 
 
 28
 Joint Appendix at 173-174.
 
 
 29
 The day after the in camera hearing, the trial court allowed Appellant's confession to be admitted into evidence.
 
 
 30
 After the jury had returned its verdict, Judge Gentry addressed the jurors in the following manner:
 
 
 31
 [Trial Court]:
 
 
 32
 I can announce in the present [sic] of this jury now, however, that during the in-camera hearing on the admissibility of the alleged confession, after hearing the psychiatrists and after hearing the officers, and the manner in which the statement was taken, as I instructed the jury following that some two-three hour hearing Tuesday night--or was it Monday night, I've forgotten--whatever, I concluded as a matter of law that the jury was entitled to consider that. After hearing the confession I became convinced in my own mind that some of the contents of that document could have been known only to the killer of Sally Ann Hutchinson. I won't go into enumerating them.
 
 
 33
 Joint Appendix at 317.
 
 
 34
 It is clear from the language used by the trial judge in questioning the psychiatrists and defense counsel, as well as addressing the jurors, that he considered the truth of Appellant's confession in deciding its admissibility. Rogers v. Richmond, supra, prohibits a trial judge from relying upon the truthfulness of a confession when deciding whether it should be admitted as a voluntary statement of the accused. Rogers states:
 
 
 35
 From a fair reading of these expressions, we cannot but conclude that the question whether Rogers' confessions were admissible into evidence was answered by reference to a legal standard which took into account the circumstance of probable truth or falsity. And this is not a permissible standard under the Due Process Clause of the Fourteenth Amendment. The attention of the trial judge should have been focused, for purposes of the Federal Constitution, on the question whether the behavior of the State's law enforcement officials was such as to overbear petitioner's will to resist and to bring about confessions not fully self-determined--a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth. The employment instead, by the trial judge ... of a standard infected by the inclusion of references to probable reliability resulted in a constitutionally invalid conviction....
 
 
 36
 365 U.S. at 543-44, 81 S.Ct. at 741.
 
 
 37
 The purpose of a Jackson v. Denno hearing is to determine the voluntariness of a confession, and during such hearing the trial judge is "duty-bound to ignore implications of reliability ... and to shut from his mind any internal evidence of authenticity that a confession itself might bear." Lego v. Twomey, 404 U.S. 477, 484 n. 12, 92 S.Ct. 619, 624 n. 12, 30 L.Ed.2d 618 (1972).
 
 
 38
 The Appellees argue that the trial judge was not concerned with the truthfulness of Appellant's confession. Rather, they contend that the trial judge pursued this line of questioning in order to determine whether Appellant had the mental capacity to voluntarily waive his rights. That is, if Appellant fabricated his confession to merely please the officers, how could he have confessed to details about the crime previously unknown to the officers?[1] Thus, the trial judge had to examine the confession to determine whether it was the product of Appellant's free will.
 
 
 39
 In support of their proposition, Appellees rely upon Gilreath v. Robinson, 544 F.Supp. 569 (1982), aff'd sub nom. Gilreath v. Mitchell, 705 F.2d 109 (1983). In Gilreath v. Robinson, Appellant contended that the trial judge improperly relied upon the truth of his confession by referring to facts of the confession known only to the accused. But this Court found that the trial judge did not violate the dictates of Rogers:
 
 
 40
 A careful reading of the ten pages of trial transcript in which the judge discussed his findings and his reasons for admitting the confession clearly shows that a belief in the truthfulness of the confession was not a reason for admission. In mentioning that the confession contained facts known only to the accused, the trial judge was not passing upon the credibility of the statement, but was answering the appellant's claim that at the time of the confession he was in a psychotic state or a condition of complete helplessness where he could do no more than "to parrot back a story that was implanted in his mind by someone else of fantasy." This is not the reliance upon truth of a confession that is condemned by Justice Frankfurter in Rogers, but is a proper inquiry and finding by the trial judge in deciding if a statement is voluntary or is the result of improper interrogation which puts words into the mouth of the accused and overrides his free will. See also United States v. Kreczmer, 636 F.2d 108, 110-11 (5th Cir.1981).
 
 
 41
 Gilreath, 705 F.2d at 110.
 
 
 42
 But Gilreath can be distinguished from the present case. The trial judge in the present case did not raise the issue of the previously unknown facts with an eye toward determining Appellant's mental state at the time of the confession. Rather, he was convinced that Appellant's confession must be true because he knew these facts previously unknown to the interrogating officers.[2] This is apparent in his questions to the psychiatrists and confirmed in his final speech to the jurors.
 
 
 43
 The Court finds that the trial court violated Rogers v. Richmond by relying upon the truth of Appellant's confession in determining its admissibility. Accordingly we vacate the judgment of the district court and remand with instructions that the writ of habeas corpus be issued, first allowing South Carolina a reasonable time in which to commence a new trial on the charges, should it so choose.
 
 
 
 *
 The Honorable Elizabeth V. Hallanan, United States District Judge for the Southern District of West Virginia, sitting by designation
 
 
 [1]
 The investigating officers testified that during his confession, Appellant stated that he accidentally nicked the victim's right leg with the murder weapon. The officers allegedly had no prior knowledge of this fact, but were able to verify it by checking photographs of the victim contained in the police file, only after receiving the information from the Appellant
 
 
 [2]
 In questioning Dr. McFadden, the trial judge came close to a "proper inquiry" of the type used by the trial judge in Gilreath. However, Judge Gentry stopped short by again returning to the issue of the veracity of Appellant's confession:
 THE COURT: Well, at one point in your testimony you stated that you thought with the proper, suitable circumstances you could get Floyd Doby to confess to anything, is that right?
 DR. McFADDEN: Yes sir.
 THE COURT: How would you explain, in this particular case for example, the defendant telling the investigators, Hitchens and Blankin, if they were the only two in the room at that time, about him inadvertently nicking the deceased's panty hose, of which they had no knowledge at the time, and later that the right panty leg had been nicked, and a hole appeared?
 DR. McFADDEN: I couldn't explain that.
 THE COURT: I mean, he just couldn't have been confessing to that unless he had some intimate knowledge of that fact, could he?
 DR. McFADDEN: It would sound that way.
 THE COURT: Thank you, sir."
 Joint Appendix at 125-26.