Floyd M. DOBY, Jr., Appellee,

v.

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS; Commissioner William Leeke; Warden George Martin; State of South Carolina; and the Attorney General of the State of South Carolina, Appellants.

No. 86–7515.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1986.

Decided Oct. 2, 1986.

---

**1.** "The time period, however, is jurisdictional and may not be extended." *Addonizio,* at p. 189,

99 S.Ct. at p. 2242.

Donald J. Zelenka, Chief Deputy Atty. Gen., Columbia, S.C., for appellant.

Stephen John Henry and John I. Mauldin, Greenville, S.C., for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

The South Carolina Department of Corrections (the state) appeals from the district court's grant of a writ of habeas corpus to petitioner, Floyd M. Doby, Jr., a South Carolina prisoner. In an earlier habeas proceeding brought by Doby (*Doby I*), we ruled that the writ should issue unless South Carolina retried him. We concluded that Doby's Fourteenth Amendment right to due process was violated during his murder trial when the judge relied on the truth of his confession in ruling on its admissibility. On remand, the South Carolina court, prior to a scheduled new trial, held a *de novo* suppression hearing on Doby's confession and, without considering its truth, determined that it was constitutionally admissible.[1] The court reinstated Doby's conviction and declined to retry him. Doby then instituted this action claiming that our mandate in *Doby I* required either a complete new trial or his release. Feeling

---

1. The petitioner does not contest the state court's conclusion in the suppression hearing.

bound by the literal language of our mandate, the district court granted the writ, but delayed its issuance pending out preliminary review. We stayed issuance of the writ and now reverse the judgment of the district court.

In November 1981, Doby filed his first petition for a writ of habeas corpus in the United States District Court for the District of South Carolina. Doby alleged that his Fifth Amendment privilege against self-incrimination had been violated, because the state trial judge had impermissibly relied upon the truth of his confession in determining that it was voluntarily made and admissible. In August 1983, the district court denied the petition. Doby appealed, and in August 1984, this court, with two of the members of the present panel then sitting, reversed the judgment of the district court and held that the trial court's reliance on the apparent truth of the confession had violated the principles of *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). It was clear to us that in admitting Doby's confession the trial judge had relied on his belief that Doby's confession was true.[2]

2. Our panel opinion deciding the first appeal related the following facts:

During the psychiatrists' testimony, the trial judge posed questions that strongly suggest he was concerned with whether Appellant had been truthful in giving his confession. For example, Judge Gentry asked Dr. Camp: "When he [Appellant] said that he did commit the crime, is it possible that he was telling the truth?" Joint Appendix at 136. Again, the trial judge asked Dr. Camp: "Is it reasonable to assume that he [Appellant] was there and did it?" *Id.* at 147.

Following this psychiatric testimony, the defense counsel argued to the trial court that it should consider this evidence on the issue of the voluntariness of Appellant's waiver of his Fifth and Sixth Amendment rights. At this time the trial court and defense counsel engaged in the following dialogue:

[Defense Counsel—Mr. Allen]

I feel like that the Court should consider the most relevant things we've brought out, not only Floyd's testimony both direct and cross, not so much what the questions were, but what the Court saw, and how he responded.

And also the doctors' background information on him, his performance level in school, his IQ, his psychological diagnosis, and all these things just go to the fact that he could not have intelligently waived his Miranda rights. That's really the only issue we're talking about.

THE COURT: How about the truth?

MR. ALLEN: Sir?

THE COURT: How about the truth? Truth.

MR. ALLEN: I don't understand the question.

THE COURT: How about the truth? you say we're not concerned with anything except his understanding of his Miranda rights.

MR. ALLEN: In this hearing.

THE COURT: Oh, yeah, yeah. Do you have any law on the middle ground between truth and legal right?

MR. ALLEN: No sir, I mean—

THE COURT: Is there any?

MR. ALLEN: Explain your question, please, I don't understand it.

THE COURT: Do you have any law on the middle ground between truth and legal right? I don't think I've ever seen any, have you?

MR. ALLEN: No sir, I haven't. I'm not sure exactly what the Court's asking, but I do have the law on the fact—

THE COURT: That's the dilemma that I'm in.

MR. ALLEN: Well, sir, it seems certainly arguable—

THE COURT: It's a real dilemma.

MR. ALLEN: —and goes to the totality of the circumstances, and these officers, being officers of the Court as you and I are, should have provided that man, after they saw; and they can't deny that they saw the type of person Fooyd [sic] is, that is readily apparent, I don't think any one would deny that; even after seeing that they did not afford him counsel, because Floyd didn't know to ask for it, because he didn't understand it.

Joint Appendix at 173–174.

The day after the *in camera* hearing, the trial court allowed Appellant's confession to be admitted into evidence.

After the jury had returned its verdict, Judge Gentry addressed the jurors in the following manner:

[Trial Court]:

I can announce in the present [sic] of this jury now, however, that during the in-camera hearing on the admissibility of the alleged confession, after hearing the psychiatrists and after hearing the officers, and the manner in which the statement was taken, as I instructed the jury following that some two-three hour hearing Tuesday night—or was it Monday night, I've forgotten—whatever, I concluded as a matter of law that the jury was entitled to consider that. After hearing the confession I became convinced in my own mind that some of the contents of that document could have been known only to the killer of Sally Ann Hutchinson. I won't go into enumerating them.

We remanded the matter to the district court with instructions that "the writ of habeas corpus be issued, first allowing South Carolina a reasonable time in which to commence a new trial on the charges, should it so choose." *Doby v. South Carolina Department of Corrections*, 741 F.2d 76, 79 (4th Cir.1984), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985). On remand, the district court ordered "that the state of South Carolina be granted seventy (70) days from May 13, 1985, either to retry or to release the prisoner from custody." The petitioner's second trial was then scheduled for August 12, 1985, in the South Carolina Court of General Sessions.

On August 9, 1985, prior to the scheduled trial, the South Carolina court addressed Doby's motion to suppress the same confession that had been admitted at the first trial. The state court considered the circumstances surrounding the taking of the confession, and, without considering the truth of the confession, found that the confession was given voluntarily and therefore was admissible. As a result of the hearing, the court reinstated Doby's sentence and did not proceed with the scheduled trial.

On August 14, 1985, Doby filed a second petition for habeas corpus. He did not challenge the state trial court's determination that his confession was voluntary. Instead, he argued that because South Carolina had failed to retry him within a reasonable time, the district court should comply with the Fourth Circuit's mandate to release him. The district court, appreciative of the limitations on the scope of its powers in construing mandates, concluded that it was required to issue the writ of habeas corpus. However, the district court delayed the issuance of the writ for thirty days, until January 29, 1986, to allow the state time to appeal. The South Carolina Department of Corrections in its appeal argues that it effectively complied with the Fourth Circuit's mandate by holding a hearing to determine the voluntariness of Doby's confession.

■ It is axiomatic that the Fifth Amendment forbids the use in a criminal trial of any involuntary confession made by the defendant. *Rogers v. Richmond*, 365 U.S. at 540–41, 81 S.Ct. at 739–40. A determination of voluntariness is inadequate if the trial judge considers the truth or reliability of the confession in deciding whether or not it was freely made. *Id.* at 543–44, 81 S.Ct. at 740–41. Where a state has failed to provide an adequate determination of voluntariness, a defendant's conviction cannot stand without further proceedings to resolve the voluntariness issue. *Jackson v. Denno*, 378 U.S. 368, 391–92, 84 S.Ct. 1774, 1788–89, 12 L.Ed.2d 908 (1964). Those proceedings should take place in the state courts, though, and not in the federal habeas corpus court.[3] Although the state must institute further proceedings in these circumstances, such proceedings need not include a complete new trial. After an evidentiary hearing, the state trial court may, as here, determine that the confession was given voluntarily and is admissible in evidence. In that event, there is no constitutional necessity for a new trial, because the defendant has already been tried and convicted by a jury with the confession placed before it. *Id.* at 394, 84 S.Ct. at 1790; *United States v. Gonzalez*, 736 F.2d 981, 983 (4th Cir.1984); *see also Boles v. Stevenson*, 379 U.S. 43, 85 S.Ct. 174, 13 L.Ed.2d 109 (1964) (modifying the Fourth Circuit's judgment to require only an evidentiary hearing rather than a complete

*Doby v. South Carolina Department of Corrections*, 741 F.2d 76, 77–78 (4th Cir.1984), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2343, 85 L.Ed.2d 858 (1985).

3. The Supreme Court has explained that "a state defendant should have the opportunity to have all issues which may be determinative of his guilt tried by a state judge or a state jury under

appropriate state procedures." *Rogers v. Richmond, supra*, 365 U.S. at 547, 81 S.Ct. at 743. *See also Sigler v. Parker*, 396 U.S. 482, 484, 90 S.Ct. 667, 669, 24 L.Ed.2d 672 (1970). Moreover, the state has a significant interest in trying such issues in its own courts under valid constitutional criteria. 365 U.S. at 548, 81 S.Ct. at 743.

new trial). A state defendant who has been afforded such a post-trial voluntariness determination generally is not entitled to further relief in the federal courts. *Swenson v. Stidham*, 409 U.S. 224, 229–30, 93 S.Ct. 359, 362–63, 34 L.Ed.2d 431 (1972).

■ We held in *Doby I* that it was clear from language used by the trial judge that he had considered the truth of Doby's confession—a consideration prohibited by the United States Supreme Court. *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961). We instructed the district court to issue the writ of habeas corpus "first allowing South Carolina a reasonable time in which to commence a new trial on the charges, should it so choose." After the district court ordered the state to retry or release Doby within a specific period, the state court scheduled the trial within that period—namely, for August 12, 1985. Prior to trial, however, Doby again moved that his confession be suppressed and the trial court again conducted a hearing after which it determined properly that the confession had been given voluntarily. The trial court interpreted *Jackson v. Denno* as generally not requiring a new trial under those circumstances and reinstated Doby's sentence without conducting a new trial. We agree with this interpretation of *Jackson v. Denno*. Under the discrete circumstances of this case, the state court's suppression hearing prior to the scheduled second trial effectively complied with our mandate.

The judgment of the district court is, therefore, reversed.

REVERSED.