CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Mark Alan Journell

December 11, 1984

Case No. FL-84-0731

By JUDGE JACK B. COULTER

The defendant, Mark A. Journell, age eighteen, stands indicted for having set fire to the dwelling house of Frank G. Roupas at 911 Campbell Avenue in the City of Roanoke on January 22, 1984. On that same day, Officer R. B. Lucas interviewed Journell at his home about the incident. The officer told Journell that he was not going to arrest him and then later read him his Miranda rights. The defendant signed the standard rights card. Journell apparently admitted his guilt in the statement that he gave to the officer. The defendant has moved to suppress this alleged confession. Briefs have been submitted and oral argument advanced in support of, and in opposition to, the defendant's motion.

THE ISSUE: DOES A PROMISE NOT TO ARREST A SUSPECT INVALIDATE HIS ALLEGED CONFESSION?

The issue provoked by the defendant's motion is whether or not an incriminating statement should be invalidated because of the promise of an investigating police officer that he is not going to arrest the suspect. Unlike most factual matters, there is absolutely no dispute nor conflict in the evidence on this point: Officer Lucas clearly conceded that prior to

reading the defendant his Miranda rights he told him that: "(he) wasn't going to arrest him, that he just needed to talk with him and that an investigation would be made into the matter."

## THE ISSUE ANALYZED: CONFESSIONS IN GENERAL

Confession by inducement or promise, therefore, is the thrust of the inquiry at hand; the subject of admissions extracted by threats, intimidation or coercion is <u>not</u> involved. Hence, whether or not the additional statement that Journell charges Lucas made, which the officer denies, to the effect that if Journell did not cooperate he would be taken downtown, is of no immediate concern. Such remark, if made, would be more akin to a threat.

The law of confessions has usually and historically involved the element of force, the application of pressure and coercion, the breaking down of one's will through the classical third degree, endless hours of interrogation and relay teams of interrogators, the deprivation of food and water, or actual physical abuse or even torture. It was such tactics as the rack and screw that generated the 5th Amendment's privilege against self-incrimination ". . . that no man shall be compelled in any criminal case to be a witness against himself."

Admissions so obtained, it was thought, could not be trustworthy because an accused's capacity to exercise his free will had been effectively destroyed either by the physical torture applied or by more subtle processes of eroding one's resistance. Hence, the emphasis in the law of confessions has been whether or not any such admissions had been <u>voluntarily</u> given. Involuntary confessions were held inadmissible, primarily because they were considered untrustworthy. However, the issue might be raised, the State must prove that the confession was voluntary, a burden, since a matter of evidence, that could be met by the test of mere preponderance rather than by any proof beyond a reasonable doubt.

But more than the reliability of the statement or the voluntary nature of its submission is involved. Corollary to the concept that one's will must not be broken -- the aversion to compulsion -- is the notion that the procedure of the police must be appropriate before one's liberty is taken or life curtailed. Chief Justice Warren expressed this view in Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L. Ed. 2d 242 (1960), as follows:

> Thus a complex of values underlies the stricture against use by the state of confessions which, by way of convenient shorthand, this Court terms involuntary, and the role played by each in any situation varies according to the particular circumstances of the case.

There are, thus, two constitutional standards that apply to the admissibility of confessions: the historic trustworthiness or voluntariness test and the police methods test. (For general discussions on the rule of due process as it applies to confessions, see such cases, in addition to Blackburn v. Alabama, supra, as Spano v. New York, 360 U. S. 315, 79 S.Ct. 1202, 3 L. Ed. 2d 1265 (1959); and Rogers v. Richmond, 365 U. S. 534, 81 S.Ct. 735, 5 L.Ed. 2d 760 (1961). See also Kamisar, LaFave & Israel, Modern Criminal Procedure 553-559 (5th Ed. 1980).)

McCormick has further subdivided these standards in his discussion of confessions and the development of due process requirements in his seminal work on evidence as follows:

1. The protection of particular defendants against use of unreliable confessions.

2. The privilege against compulsory self-incrimination and the values underlying this rule.

3. The discouragement of police practices that are generally likely to result in unreliable evidence.

4. The discouragement of police practices which are unacceptable on grounds other than the unreliability of the resulting evidence.

5. The preservation of the trial rights of an accused. (See McCormick on Evidence 315-316 (2d Ed. 1972).)

It is primarily the fourth value as summarized by McCormick -- the discouragement of unacceptable police practices -- coupled with the integrity of the state -- that is at issue in the case at bar.

THE SPECIFIC ISSUE:
CONFESSIONS BY INDUCEMENT OR PROMISE

Against this brief general background, the more precise law on confessions by inducement or promise should be examined. The classic statement on this subtopic is found in Bram v. United States, 168 U.S. 532, 18 S. Ct. 183, 42 L.Ed. 568 (1897), as more recently restated with approval in Malloy v. Hogan, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653, 659 (1964), and Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S. Ct. 448, 9 L. Ed. 2d 357 (1963):

> . . . a confession in order to be admissible must be free and voluntary; that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . . . (emphasis added)

The general statement of the rule is found in 29 Am. Jur. 2d, Evidence, § 558 at page 617:

> As a rule, a confession of one accused of a crime which is induced or influenced by promises made to the accused which hold out a hope of benefit or reward is not a voluntary confession and is not admissible in evidence.

And further under § 563 at page 621:

> If a confession is induced by a promise of leniency or clemency, although not necessarily of an entire escape from punishment, it is not admissible in evidence against the confessor.

This theme is echoed in Jackson v. Commonwealth, 116 Va. 1015, 1020 (1914):

> It cannot be doubted that our own cases, as well as the cases decided in other jurisdictions, hold that an alleged confession is inadmissible where it was induced by the hope of gain of some advantage or to avoid some evil in reference to the proceeding against the declarant.

In 3 Wharton's Criminal Evidence, § 680, p. 463 (13th Ed. 1973) the law is summarized:

> A confession induced by a promise to confer a benefit upon the accused is involuntary. Thus, a confession is involuntary when made in response to a promise to discontinue or not to commence a prosecution; . . .

A case almost squarely in point is United States ex rel. Caserino v. Denno, 259 F. Supp. 784 (S.D.N.Y. 1966), in which the court held constitutionally inadmissible a confession induced by statements of a police officer which were reasonably understood by the accused as an assurance that in exchange for his statement as to the events under investigation he would not be prosecuted for any crime arising therefrom. In this federal district court case the judge referred to the following observation made in Shotwell, supra:

> Thus, the Supreme Court, in discussing the "position . . . of a person, accused or suspected of crime, to whom a policeman, a prosecutor, or an investigating agency has

made a promise of immunity or leniency in return for a statement," has stated that "(i)n those circumstances an inculpatory statement would be the product of inducement, and thus not an act of free will."

The statement made by Officer Lucas in the case at bar, irrespective of his intentions or motive, was purely and simply an unconditional promise that he was not going to arrest Journell if Journell told him what had happened. There can be no responsible argument that this was not a promise; it went much further than the cases in which confessions have been suppressed where the promise was only of leniency. Here complete and total immunity was suggested.

In substance, the officer said "I AM NOT GOING TO ARREST YOU IF YOU TELL ME WHAT HAPPENED." The obvious implication from such a statement to an eighteen-year-old, adult only because of statutory creation, was that if Journell did not tell him what had happened he would be arrested. The confession was clearly induced by the promise of not being arrested. It was, therefore, clearly within the proscriptions of Bram, a confession obtained by "any promise, direct or implied, however slight."

Of even greater significance, however, the promise by Lucas was a positive, unequivocal commitment by an agent of the state, clearly cloaked with at least the apparent authority to bind the state, that no arrest would follow if a full and truthful statement of the occurrence were given. That the officer was a person in authority and hence could bind the state is conceded by the Commonwealth in her argument (Commonwealth's Memorandum, p. 2), citing Shifflet v. Commonwealth, 55 Va. (14 Gratt.) 652 (1858).

The out-of-court confession is, in principle, identical to the plea of guilty, for the plea of guilty is nothing more than an in-court confession. The plea of guilty, it is to be recalled, is not acceptable if based on promises. See Question 8 of Form 8 of the Appendix of Forms promulgated by the

Rules of the Supreme Court. "Has anyone made you any other promises of leniency?" See also Harris v. Beto, 367 F. 2d 567 (5th Cir. 1966), where the Court observed:

> In practice there is very little difference in certainty or result between the case in which the prosecution has secured a guilty plea and the case in which it comes to court armed with a confession.

The integrity of the state is thus at issue. The same underlying principle that guided our Supreme Court in Jordan v. Commonwealth, 217 Va. 57 (1976), where the state was compelled to specifically perform a plea agreement, is therefore applicable.

> The word of the Commonwealth of Virginia has been given in this case, and it cannot be abridged, revoked or diluted. The integrity of the Commonwealth itself must be upheld.

The Commonwealth argues that, notwithstanding the officer's promise not to arrest, Journell waived his Miranda rights. But reading Journell his rights became meaningless ritual when considered in light of the antecedent promise that had been made. Hence:

"You have a right to remain silent," but so what. If you tell me what happened, I am not going to arrest you anyway;

"You have a right to an attorney," but why do you need one since I am not going to arrest you anyway;

"Anything you say may be used against you in a court of law," but, since I am not going to arrest you, you won't be in a court of law.

The fact that Journell waived his rights must be measured against the promise that he would not be arrested. When so tested, such waiver must yield to the prior and overriding commitment.

The Witt case [Witt v. Commonwealth, 215 Va. 670 (1975)], relied on so strongly by the Commonwealth, stands primarily for the proposition that the state's burden of proving a confession voluntary does not rise to proving it beyond a reasonable doubt. Further, the coercion at issue was implied -- an inference drawn by the accused that if he cooperated his pregnant wife would not be arrested. But Witt had conceded: "Nobody promised me anything." The trial court had evaluated all the conflicting testimony and resolved the conflicts in favor of the Commonwealth, a conclusion that was of obvious influence on appeal. The case at bar is far more similar to Hammer v. Commonwealth, 207 Va. 135 (1966), where there was no conflict in the evidence that the accused had confessed in response to the promise that his parents and wife would not be arrested, a confession that the Supreme Court set aside on appeal.

## CONCLUSION

We are guided by constitutional principles, whether popular or not. And our criminal justice is founded on the proposition that a crime should be proved other than out of the mouth of an accused. The law is clear that confessions induced by promises will not stand. Furthermore, the use of promises that are false in order to elicit confessions should not be condoned -- and will not be by this Court. The promise of the Commonwealth in this case must be respected. The motion to suppress is accordingly sustained.