IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 3, 2002

## STATE OF TENNESSEE v. CLAZELLE JENNINGS

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 00-12920, 98-12024, 25    John P. Colton, Jr., Judge**

_____

**No. W2001-01022-CCA-R3-CD  - Filed January 29, 2003**

_____

A Shelby County jury convicted the defendant, Clazelle Jennings,[1] of aggravated robbery and two counts of aggravated assault. The trial court sentenced him to concurrent sentences of ten years for aggravated robbery and four years for each of the aggravated assaults. On appeal, the defendant presents the following issues: (1) whether the trial court erred in denying his motion to suppress his statements to police; (2) whether the evidence was sufficient to support the convictions; (3) whether the convictions for aggravated robbery and aggravated assault upon the same victim violate double jeopardy; and (4) whether the sentence is excessive. Upon review of the record and the applicable law, we reverse and dismiss one of the aggravated assault convictions due to a double jeopardy violation. We remand for a clerical correction of the remaining aggravated assault judgment. We affirm in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed in Part;**
**Reversed in Part; Remanded**

JOE G. RILEY, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Robert B. Gaia, Memphis, Tennessee, for the appellant, Clazelle Jennings.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Stephen Patrick Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Charles Yi, the owner of Sang's Express, a convenience store, testified that on April 28, 1998, at approximately 11:00 a.m., a customer walked into the store and exited the store a short time

_____

[1] The defendant's name is spelled "Clauzelle" on some pleadings. Pursuant to our policy, we use the spelling set forth in the indictment.

later. The customer then returned "three or four seconds later" and walked to the kitchen area, which was five to ten feet from the cash register where Yi was standing. Two men wearing masks followed the customer into the store. One of the men stood in front of the cash register, and the other went to the kitchen where Yi's mother and Lovey Evans, an employee, were cooking.

Yi recognized the masked man at the cash register as Edward Tomlinson, who had been to the store "many times." Yi stated Tomlinson pointed a gun in Yi's face and demanded money. Yi identified a gun recovered after the robbery as resembling the weapon used by Tomlinson. Tomlinson handed the customer a bag and told him to put the money from the cash register in the bag; the customer did so. Tomlinson also told the customer to check Yi's pockets; the customer did so, but Yi did not have any cash. After the customer gave the bag to Tomlinson, the two masked men ran, and the second masked gunman, whom Yi described as taller and slimmer than Tomlinson, pointed his gun at Yi while running out of the store. Yi testified that after the gunmen escaped, the customer stayed in the store for a short time. Yi stated that when he told the customer he knew the identity of one of the gunmen, the customer became nervous and left before the police arrived.

Yi estimated the gunmen took approximately $400 in cash and food stamps from the cash register. Although Yi could not identify the defendant as the second gunman, he testified they were similar in height.

Lovey Evans testified that a man wearing a mask and holding a gun walked into the kitchen where she and Yi's mother were cooking. He demanded money, and Evans lifted her apron to show him that she did not have any pockets to carry cash. Evans stated she was "scared to death." Evans further stated she could hear someone else in the store demanding money. A short time later, the gunman ran from the store. Evans described the gunman as tall and skinny; however, she was unable to make an identification because the gunman was wearing a mask. She identified a gun recovered after the robbery as the one held on her by the masked perpetrator.

Toya Bernard, a neighborhood resident, testified that as she was entering the store, the two gunmen pushed her out of the way and ran toward the railroad tracks located approximately ten feet from the store. When they reached the railroad tracks, both gunmen pulled off their masks, and one of the gunmen threw his mask on the ground. Bernard stated they both looked back and then continued to run toward the Tupelo Apartments. A short time later, police officers brought the defendant to the store, and Bernard identified him as one of the gunmen.

Benny Walls testified that while he was at a beauty shop speaking to the owner, a lady ran in and said someone was robbing Sang's Express, located across the street. Walls stated he drove his car to the store approximately 500 feet across the street, and when he arrived, he saw two men run out of the store. Walls followed them in his car to the Tupelo Apartments and saw the two men enter an apartment. He contacted the police and watched the apartment until they arrived. He testified he did not see anyone else enter or leave the apartment during this time. When an officer arrived, Walls identified the apartment he saw the two men enter.

Officer Michael Hamblin, who responded to the call at Tupelo Apartments, testified he and other police officers entered the apartment and found the defendant and another male. After arresting the defendant, the officers searched the apartment. Captain Barry Lane testified the officers recovered a black skull cap with the face cut out and two .22 caliber pistols from the attic. The guns were the same two weapons identified by Yi and Evans at trial. They further found $338.66 in cash hidden inside a bag of toilet paper and seventeen food stamps in the bedroom.

Sergeant Reginald Moore testified he conducted an oral interview with the defendant after the defendant signed a waiver of rights form. During the interview, the defendant admitted he was responsible for the robbery. Sergeant Moore stated he also took a formal typewritten statement from the defendant after again making him aware of his *Miranda* rights.

The defendant told the officer that the robbery was Octavious Gillum's idea, who, the defendant said, walked into the store to determine how many people were in the store. Gillum then exited the store, told the defendant and Tomlinson what to do, and reentered the store. Gillum told Tomlinson to ensure Yi did not do anything and to instruct Gillum to put the money into the bag. Gillum told the defendant to prevent the others in the store from doing anything, and he gave the defendant and Tomlinson each a black skull cap with the eyes cut out to use as masks. The defendant stated Tomlinson held up the cashier while he held up two females. Tomlinson told Gillum to put the money from the cash register in a bag, and when Gillum handed Tomlinson the bag, both Tomlinson and the defendant ran out of the store.

The defendant offered no proof at trial. A jury convicted the defendant of aggravated robbery of Yi, aggravated assault of Yi, and aggravated assault of Evans. The trial court sentenced the defendant to ten years for aggravated robbery and four years each for the two counts of aggravated assault, to run concurrently with the aggravated robbery conviction.

## I. DEFENDANT'S STATEMENTS

The defendant contends the trial court erred in denying his motion to suppress his statements to the police. He submits the police officers coerced him into making the statements. We disagree.

## A. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews

*de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

## B. Suppression Hearing

At the suppression hearing, Sergeant Morgan testified the defendant was arrested at approximately 11:30 a.m. on April 28, and he gave a formal typewritten statement at approximately 6:00 p.m. Sergeant Morgan could not recall whether the defendant requested anything to eat or drink, but testified that they always offered them. He further stated that the defendant did not request to speak to a family member or an attorney.

Sergeant Morgan testified that prior to making a statement, the defendant signed a waiver of rights form. The officer then conducted an oral interview with the defendant. After the oral interview, the defendant gave a formal typewritten statement, in which he again waived his *Miranda* rights. Sergeant Morgan testified he did not promise or threaten the defendant. The defendant appeared to understand what was occurring, indicated he freely and voluntarily gave the statement, and signed the last page of the formal statement.

The defendant testified that when he was arrested, the police officers took him to the police station and placed him in a small interview room where he remained until he was booked. He stated the officers did not offer him food or beverages, but he never asked for either. He further stated he was not allowed to use the restroom facilities, but he did not need to do so. The defendant admitted the police officers did not make him any promises in exchange for his testimony.

The defendant testified he requested to speak to an attorney prior to giving the statements, but Sergeant Morgan told him he would be provided with an attorney at a later time. He stated that after he requested an attorney, he signed the waiver form, but he did not remember the officers reading him the *Miranda* warnings again prior to giving the formal typewritten statement.

In denying the defendant's motion to suppress, the trial court examined the waiver form and the typewritten statement, which were both signed by the defendant. The trial court stated there was no evidence that the defendant could not read or had trouble reading the documents. It found both the oral statement and the typewritten statement were freely, knowingly, and voluntarily given by the defendant without duress.

## C. Voluntariness of the Statement

The defendant contends the police officers coerced him into giving the statements, and that under the totality of the circumstances, his statement should have been suppressed by the trial court. When determining whether an accused has voluntarily, knowingly and intelligently waived his *Miranda* rights, this court must consider the totality of the circumstances which existed when the accused waived these rights. State v. Middlebrooks, 840 S.W.2d 317, 326 (Tenn. 1992); State v.

Benton, 759 S.W.2d 427, 431 (Tenn. Crim. App. 1988). The totality of the circumstances must reveal an uncoerced choice and the required level of comprehension. State v. Blackstock, 19 S.W.3d 200, 208 (Tenn. 2000) (quoting State v. Stephenson, 878 S.W.2d 530, 545 (Tenn. 1994)).

Confessions that are involuntary, i.e., the product of coercion, whether it be physical or psychological, are not admissible. Rogers v. Richmond, 365 U.S. 534, 540, 81 S. Ct. 735, 739, 5 L. Ed. 2d 760 (1961). The test of voluntariness under the Tennessee Constitution is broader and more protective of individual rights than the test of voluntariness under the United States Constitution. Stephenson, 878 S.W.2d at 544. The crucial question is whether the behavior of the state's officials was "such as to overbear petitioner's will to resist and bring about confessions not freely self-determined." State v. Kelly, 603 S.W.2d 726, 728 (Tenn. 1980) (quoting Rogers, 365 U.S. at 544, 81 S. Ct. at 741). The question must be answered with "complete disregard" of whether or not the accused was truthful in the statement. Rogers, 365 U.S. at 544, 81 S. Ct. at 741.

In the case at bar, the defendant testified the police officers did not provide him with food, beverages, or the use of the restroom facilities. However, he further stated he never asked for food or beverages, and that he did not need to use the restroom facilities. The defendant also admitted the officers did not make any promises or threats in order to compel him to give the statements. The evidence does not preponderate against the trial court's findings. Therefore, we conclude the defendant was not coerced into making the admissions to the police.

During the suppression hearing, the defendant testified he requested an attorney prior to the interrogation, and Sergeant Morgan denied his request. However, in its findings, the trial court implicitly accredited the testimony of Sergeant Morgan, who stated the defendant did not request an attorney, was made aware of his *Miranda* rights, and voluntarily waived his rights prior to giving both the oral and typewritten statements. Therefore, we conclude the defendant knowingly and voluntarily waived his *Miranda* rights and made the statements to the police. The trial court properly denied the defendant's motion to suppress.

## II. SUFFICIENCY

The defendant contends the evidence was insufficient to support his convictions for aggravated robbery and aggravated assault. We disagree.

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational

trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

## A. Aggravated Robbery

As applicable to the case at bar, "aggravated robbery" is robbery "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1) (1997). "Robbery" is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a) (1997).

As viewed in a light most favorable to the state, the evidence shows that the defendant and Tomlinson entered Sang's Express wearing masks and holding guns. Tomlinson held a gun on Yi and demanded the money from the cash register, while the defendant held a gun on Evans and Yi's mother in the kitchen. After retrieving the money and food stamps, they ran out of the store. Bernard testified she saw the two men run out of the store, and they took off their masks as they were running. She further identified the defendant as one of the perpetrators.

Walls testified he also saw the two men run from the store, followed them to the Tupelo Apartments, and then called the police. He stated he watched the apartment until the police arrived, and he did not see anyone else enter or leave the apartment. When the police entered the apartment, they found the defendant, another male,[2] cash, food stamps, two pistols, and a black mask. We conclude the evidence was sufficient to support the conviction for aggravated robbery.

## B. Aggravated Assault

As applicable to the case at bar, "aggravated assault" is the intentional or knowing commission of assault through the use or display of a deadly weapon. Tenn. Code Ann. § 39-13-102(a)(1)(B) (1997). A person commits "assault" who "[i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury." *Id.* § 39-13-101(a)(2) (1997).

Because the defendant's conviction for the aggravated assault of Yi is reversed, we only address the sufficiency of the evidence of the conviction for the aggravated assault of Evans. During the robbery, the defendant held a gun on Evans, who testified that she was "scared to death." We conclude the evidence was sufficient to support the conviction for the aggravated assault upon Evans.

---

[2] The officers did not testify as to the identity of the other male. However, we assume the other male was Tomlinson from the testimony of other witnesses. Bernard testified she saw two masked men run out of the store and take off their masks while they were running. Walls testified he followed them to the apartment, and no one entered or exited the apartment before the police arrived. Yi testified "the customer," who, according to the defendant's statement, was Gillum, stayed in the store after the two masked men left.

### III. DOUBLE JEOPARDY

The defendant contends his separate convictions for the aggravated robbery and aggravated assault of Yi violate his constitutional protection against double jeopardy. The state concedes that the dual convictions are improper. *See* State v. Aaron Bernard Gray, No. 02C01-9707-CC-00270, 1998 Tenn. Crim. App. LEXIS 505, at \*6 (Tenn. Crim. App. May 1, 1998), *perm. to app. denied* (Tenn. 1998) (holding aggravated assault by causing another to reasonably fear imminent bodily injury through the use of a deadly weapon is a lesser-included offense of aggravated robbery accomplished with a deadly weapon). Therefore, we conclude the defendant's convictions for both the aggravated robbery and the aggravated assault of Yi violate his protection against double jeopardy. *See* State v. Green, 947 S.W.2d 186, 189 (Tenn. Crim. App. 1997) (holding that under the double jeopardy clause, a defendant may not be convicted of two offenses if one is a lesser-included offense of the other). Therefore, the defendant's conviction for the aggravated assault of Yi is reversed and dismissed.[3]

### IV. SENTENCING

The defendant contends his sentences are excessive. A defendant who challenges his or her sentence has the burden of proving the sentence imposed by the trial court is improper. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). It is this court's duty to conduct a *de novo* review of the record with a presumption the trial court's determinations are correct when a defendant appeals the length, range, or manner of service of his or her sentence. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). Due to the misapplication of enhancement factors in this case, we review the sentences *de novo* without a presumption of correctness.

The trial court applied enhancement factor (6), "[t]he personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great." *See* Tenn. Code Ann. § 40-35-114(6) (1997). Although not raised as error, we conclude the evidence does not support this enhancement factor.

The trial court also applied enhancement factor (10), "[t]he defendant had no hesitation about committing a crime when the risk to human life was high." *See id.* § 40-35-114(10) (1997). Enhancement factor (10) may be applied where a defendant creates a high risk to the life of someone other than the named victim. State v. Reid, 91 S.W.3d 247 (Tenn. 2002). The defendant was convicted for aggravated robbery of Yi and aggravated assault of Evans through the use of a deadly

---

[3] At trial, the state argued the defendant was guilty of the aggravated assault upon Yi based upon his criminal responsibility for the conduct of Tomlinson during the armed robbery. The state did not contend the aggravated assault upon Yi occurred after the robbery when the defendant, while leaving the store, pointed the weapon at Yi. Thus, we will not address whether the conviction could stand under the latter theory.

weapon. Yi's mother was not a named victim in the indictments; the defendant held the loaded gun on Yi's mother. The defendant clearly created a high risk to the life of one other than the named victims. Therefore, we conclude the trial court properly applied enhancement factor (10) to the convictions for aggravated robbery and aggravated assault.

The trial court also applied enhancement factor (11), "[t]he felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury." *See* Tenn. Code Ann. § 40-35-114(11) (1997).[4] Although not raised as error, this factor is inapplicable. There was no death or bodily injury; threat of bodily injury is inherent to both aggravated robbery and aggravated assault with a deadly weapon; and there is no evidence of a prior felony conviction involving death or bodily injury.

The range of sentencing for a Range I standard offender for Class B felony aggravated robbery is eight to twelve years, *see* Tenn. Code Ann. § 40-35-112(a)(2), and for Class C felony aggravated assault is three to six years, *see id.* at (a)(3). The trial court found no mitigating factors. The misapplication of one or more enhancement factors does not necessarily lead to a reduced sentence. State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). The trial court's sentence of ten years for aggravated robbery (two years above the minimum) and four years for aggravated assault (one year above the minimum) is justified by enhancement factor (10), to which we give great weight. Based upon our *de novo* review without a presumption of correctness, we conclude these two sentences are appropriate.

## V.  CLERICAL ERROR

At the sentencing hearing, the trial court stated the sentence for aggravated assault was four years. However, the judgment reflects a sentence of five years. Where there is a conflict between the verbatim transcript and the judgment, the transcript controls. State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). Accordingly, we remand for entry of a corrected judgment of four years regarding the aggravated assault upon Lovey Evans.

## VI.  CONCLUSION

In summary, we conclude the defendant's separate convictions for the aggravated robbery of Yi and the aggravated assault of Yi violate his constitutional protection against double jeopardy. The conviction for the aggravated assault of Yi is, therefore, reversed and dismissed. Because the trial court ordered that the sentences run concurrently, the dismissal has no effect on the defendant's effective sentence. The case is remanded to correct the sentence for the aggravated assault upon Lovey Evans. The judgments of the trial court are otherwise affirmed.

---

[4] At the sentencing hearing, the trial court found "the felony resulted in the death or bodily injury of parties in these matters." Although it is unclear from the statement whether the trial court applied enhancement factor (11), the trial court indicated in its written findings that it applied enhancement factor (11).

_____
JOE G. RILEY, JUDGE